OPINION OF THE COURT
David O. Boehm, J.
The plaintiff, John Mansour, joined the New York State *122 Organized Crime Task Force (Task Force) as an Assistant Attorney-General in 1970. In 1981, defendant Ronald Gold-stock was appointed by the Governor and the Attorney-General, defendant Robert Abrams, to head the Task Force, and a year later, defendant Martin Marcus was hired as First Assistant in charge of field operations.
The Task Force had been without a permanent director for eight years before Goldstock was appointed. After his appointment, Goldstock implemented a major reorganization involving the formation of investigative teams comprised of investigators, accountants, analysts and lawyers. Under the team structure, decisions involving investigations and prosecutions were to be made by consensus. Although deferred to on legal matters, the attorney team member no longer had line authority over nonlegal professional staff.
Prior to Goldstock’s appointment, the plaintiff had been the de facto supervisor of the staff at the Rochester regional office. However, after the reorganization, he was assigned as a team attorney with the financial crimes team for the Task Force’s western region, headquartered in Buffalo. Performance evaluations prepared by Marcus make it appear that the plaintiff did not perform well within the team structure. On October 26, 1983, during a performance evaluation meeting with plaintiff, Marcus told him to find a new job.
Following his termination, plaintiff commenced this action seeking damages for defamation, interference with contractual rights and, under 42 USC § 1983, violation of his civil rights. Defendants move for summary judgment dismissing the complaint, and plaintiff cross-moved for partial summary judgment and for leave to amend his complaint.
In support of his section 1983 claim, the amended complaint and plaintiff’s affidavit allege that plaintiff expressed himself on a number of occasions on matters of public concern, and that such expressions were a substantial factor in defendants’ decision to discharge him. Specifically, plaintiff alleges that he refused instructions from Marcus and Goldstock to present a matter to a Grand Jury because the Grand Jury had no power to consider the matter; that he disagreed with Marcus whether there was sufficient evidence to obtain an indictment in Monroe County for criminal possession of stolen property against a suspect because there was no proof of possession in Monroe County; that he accepted an attorney’s offer to surrender his client for arraignment, despite protests from a Task *123 Force investigator who wanted to arrest the individual late on a Friday so that he would have to remain in jail over the weekend as a means of pressuring him into cooperating with an ongoing investigation; that he recommended the return of items seized pursuant to a search warrant when they were later found to have no evidentiary value, despite the wishes of other Task Force members who wanted to retain the items indefinitely to put pressure on the owner; that he objected to the use of subpoenas to compel individuals to travel to the Task Force office in Buffalo for informal interviews; that he advised against initiating an investigation proposed by Marcus involving wiretaps and requiring extensive manpower, where the subject of the investigation was already awaiting imminent trial in Federal court; that he disagreed with Marcus’ instruction that interviews disclosing potentially exculpatory information should not be preserved; and, that he suggested an allegedly stolen truck engine be inspected by an expert to determine its value and condition to test the owner’s claim that it was damaged and to ascertain the difference between its value and the amount the owner paid.
Defendants’ motion to dismiss raises the objection that plaintiff’s allegations reveal only areas of disagreement and dissatisfaction which do not constitute protected First Amendment speech.
Although, generally, an employer has an unfettered right to terminate an at-will employee, the employee may not be terminated for a constitutionally impermissible reason (see, Mt. Healthy City Bd. of Educ. v Doyle, 429 US 274; Murphy v American Home Prods. Corp., 58 NY2d 293, 305). It is well settled that public employment may not be made subject to conditions which infringe upon an employee’s constitutionally protected right of freedom of expression (Keyishian v Board of Regents, 385 US 589, 605-606). To determine whether such a right has been violated, it is necessary to balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees” (Pickering v Board of Educ., 391 US 563, 568).
Before such balancing is required, however, the court must initially decide whether the speech at issue touches upon a matter of public concern. If it does not, it is not entitled to First Amendment protection (see, Giacalone v Abrams, 850 F2d 79, 86). When an employee’s expression does not relate to *124 a "political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment” (Connick v Myers, 461 US 138, 146).
Whether speech involves a matter of public concern is determined by its content, form and context (supra, at 147-148). The inquiry focuses on the extent to which the employee speech "was calculated to disclose wrongdoing or inefficiency or other malfeasance on the part of governmental officials in the conduct of their official duties” (Koch v City of Hutchinson, 847 F2d 1436, 1445, cert denied 488 US 909), and whether the employee was speaking as "a concerned public citizen, informing the public that the state institution is not properly discharging its duties * * * or merely as an employee, concerned only with internal policies or practices which are of relevance only to the employees of that institution” (Cox v Dardanelle Pub. School Dist., 790 F2d 668, 672).
Initially, the burden is on plaintiff to show that his speech was constitutionally protected, and that it was a substantial or motivating factor in the defendants’ decision to terminate him. If plaintiff meets that burden, defendants must then show by a preponderance of the evidence that they would have reached the same decision even in the absence of the protected speech (Mt. Healthy City Bd. of Educ. v Doyle, 429 US 274, 287, supra).
On a prior appeal, the Appellate Division held that the disagreement over the presentation to the Grand Jury of the matter involving a former public employee clearly involved a matter of public concern, noting that the Grand Jury has no power to consider a report where the subject is no longer a public employee (Mansour v Abrams, 144 AD2d 905, 906).
The Appellate Division’s conclusion is also consistent with the holding in Giacalone v Abrams (850 F2d 79, supra), which involved statements by an Assistant Attorney-General expressing concern that a litigation strategy formulated by his superiors was legally unauthorized and ethically improper. Although acknowledging that it presented a close question, the Giacalone court concluded that such statements touched upon matters of colorably public concern (supra, at 86).
The Appellate Division did not, however, decide whether any of the other matters set forth by the plaintiff were matters of public concern. Most of them appear to involve *125 disagreements over the internal affairs of the Task Force. Disagreements over a criminal possession of stolen property charge, whether the Task Force should have arrested an individual or allowed him to surrender, whether an extensive investigation should be conducted when the subject was facing an imminent trial in Federal court, and whether an expert should have been retained to examine a truck engine do not evidence any illegal or unethical conduct by the Task Force, nor does plaintiff allege that they do. Clearly, they are not matters of public concern. Every criticism by a public employee directed at his superiors does not "plant the seed of a constitutional case. * * * [T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs” (Connick v Myers, 461 US 138, 149, supra).
Likewise, plaintiff’s opposition to the use of subpoenas requiring that people be examined at the Task Force office in Buffalo is no more than a disagreement over internal office affairs. Subdivision (4) of Executive Law § 70-a authorizes the issuance of subpoenas to compel witnesses to attend hearings at any place within the State. Plaintiff’s contention that subpoenas should not be employed for conducting what he terms "informal hearings” is not supported by subdivision (4), which requires that every witness be examined privately. His reliance upon case law involving the more limited subpoena power of District Attorneys (e.g., Drake v City of Rochester, 96 Misc 2d 86, affd 74 AD2d 996; People v Arocho, 85 Misc 2d 116) is misplaced.
The disagreement over the return of items seized pursuant to a search warrant presents a different question. Generally, "property seized pursuant to a search warrant technically remains in the custody of the court, and the District Attorney or property clerk possesses the property only as an officer of the court, subject to the court’s discretion and disposition” (Matter of Documents Seized Pursuant to Search Warrant, 124 Misc 2d 897, 899). The plaintiff does not contend that the initial seizure was unlawful, unlike the case on which he relies (Matter of B. T. Prods. v Barr, 44 NY2d 226 [Organized Crime Task Force lacked authority to obtain a search warrant without prior authorization from the Governor and local District Attorney]). Nor does he present any authority holding *126 that law enforcement officials possessing property lawfully seized are obligated to return the property before a court directs such relief (see, Boyle v Kelley, 42 NY2d 88 [a CPLR article 78 proceeding for mandamus or an action for replevin are appropriate legal remedies to obtain the return of property]).
However, since the alleged motivation for the continued retention of the items had nothing to do with their evidentiary value, but was done solely to pressure the owner to cooperate with an investigation, plaintiffs concern about the propriety of retaining the items would appear to involve a matter of public concern. Such coercive tactics by the government, at the very least, warrant public scrutiny.
The deliberate failure, as a matter of policy, to preserve exculpatory evidence concerning suspects in a Task Force investigation unquestionably involves a matter of public concern. Suppression by the prosecution of evidence favorable to an accused violates due process "irrespective of the good faith or bad faith of the prosecution” (Brady v Maryland, 373 US 83, 87). A prosecutor’s obligation to disclose exculpatory evidence to a criminal defendant also includes "a correlative 'obligation to preserve evidence until a request for disclosure is made’ ” (People v Martinez, 71 NY2d 937, 940, quoting People v Kelly, 62 NY2d 516, 520). The failure of a governmental agency to preserve potentially exculpatory evidence violates a defendant’s due process rights, regardless of whether he was a suspect at the time the evidence was obtained (People v McCann, 115 Misc 2d 1025). Since " 'the State has no interest in interposing any obstacle to the disclosure of the facts’ ” (People v Rosario, 9 NY2d 286, 290, quoting People v Davis, 52 Mich 569, 573, 18 NW 362, 363), the dubious policy of systematically failing to make a record of exculpatory evidence violated a clear legal duty to do so, and plainly involves a matter of public concern.
In this context, it is well to remember the admonitory words of Justice Brandéis. "Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. * * * If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy” (Olmstead v United States, 277 US 438, 485 [dissent]).
[The court then addressed whether these matters of public *127 concern served as a basis for plaintiffs termination and concluded that issues of fact existed in this regard sufficient to preclude the parties’ motions for summary judgment. This discussion, along with the court’s analysis of other issues raised, has been omitted for purposes of publication.]