**UNITED STATES of America, Plaintiff,**

v.

**$3,000,000 OBLIGATION OF QATAR NATIONAL BANK to Filippos NOMIKOS Represented By Bank Check Number 000547, Dated July 4, 1989, Payable at and By Manufacturers Hanover Trust Co., 270 Park Avenue, New York, New York, Defendants-in-Rem.**

**No. 90 Civ. 6427(PNL).**

United States District Court, S.D. New York.

Jan. 19, 1993.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Bart G. Van De Weghe, Asst. U.S. Atty., of counsel), for plaintiff.

Steven G. Storch, Beigel & Sandler, New York City, for claimant.

## OPINION AND ORDER

LEVAL, District Judge.

This is an action brought by the United States Government for civil forfeiture under 18 U.S.C. § 981. Claimant moves to dismiss for lack of subject matter jurisdiction.

### Background

For present purposes, only a brief summary of the elaborate facts is necessary. The action relates to an alleged sale to Libya of aircraft parts originating in the United States, in violation of the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1701. The Government contends that because a violation of IEEPA is a "specified unlawful activity" under 18 U.S.C. §§ 1956 and 1957, the money at issue, which was related to the alleged sale, is subject to forfeiture pursuant to 18 U.S.C. § 981.

This alleged export scheme involved a number of individuals, including Loizos Lysandrou, Filippos Nomikos, and Ihsan Barbouti. Barbouti died in July 1990; his heir at law, Magdalen Gaynor, is the claimant in this action. During the summer of 1988, in Athens and London, Barbouti and Lysandrou began discussing the possibility of purchasing aircraft parts for shipment to Libya. Whether this transaction was to be carried out in compliance with United

States laws and whether it was ever actually consummated are both in dispute.

In July 1989, Barbouti filed a complaint in Florida state court against Lysandrou and Nomikos seeking injunctive and compensatory relief. The complaint alleged that Lysandrou had attempted to convert $800,000 of Barbouti's funds, which had been entrusted to Lysandrou in relation their exporting plans, to Lysandrou's personal use. Barbouti then commenced an action in Paris seeking, in part, an order against the Qatar Bank to return $3 million to an account at Qatar controlled by Barbouti. The $3 million had been transferred pursuant to a Qatar bank check dated July 4, 1989, payable to Nomikos on Qatar's account at Manufacturers Hanover Trust Co. in New York. At Barbouti's request, Qatar stopped payment on the bank check. In August 1989, the Paris court directed Qatar to rescind its stop payment order and permit payment of the $3 million bank check at Manufacturers Hanover.

Before Nomikos obtained these funds, however, Barbouti filed an action in August 1989 in New York state court by way of order to show cause, seeking, *inter alia*, to restrain Lysandrou and Nomikos from obtaining payment of the $3 million Qatar bank check. The New York state court issued a temporary restraining order and then, in a decision dated April 24, 1990, a preliminary injunction enjoining payment of the $3 million obligation of Qatar to Nomikos or Lysandrou.

When Lysandrou and Nomikos moved to dismiss for lack of personal jurisdiction over them, the New York trial court denied the motion, stating that although it did not have personal jurisdiction over those defendants, the court did have "in rem jurisdiction" because the res at issue was in New York.

In October 1990, the United States filed this forfeiture action and another action in the United States District Court for the Southern District of Florida. The action in this court seeks forfeiture of the $3 million at Manufacturers Hanover; the Florida action seeks forfeiture of the $800,000 at

issue in Barbouti's action in Florida state court.

*Discussion*

Claimant argues that this court lacks subject matter jurisdiction because the New York state court has already exercised jurisdictional control over the res— namely, the $3,000,000 at Manufacturers Hanover Trust Co. in New York—that is at issue in this case. Claimant contends, citing *Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1935), and *Princess Lida v. Thompson*, 305 U.S. 456, 465–67, 59 S.Ct. 275, 280–81, 83 L.Ed. 285 (1939), that when a state court exercises in rem, or quasi in rem, jurisdiction over a res, a federal court may not thereafter assert such jurisdiction over the same res. Claimant points to several recent federal cases holding that a federal district court lacks jurisdiction over a federal forfeiture action when a forfeiture action has already been commenced in state court. *See United States v. One 1985 Cadillac Seville*, 866 F.2d 1142, 1145–46 (9th Cir.1989); *United States v. $79,123.49 in United States Cash and Currency*, 830 F.2d 94, 96–97 (7th Cir.1987); *United States v. $2,542 in United States Currency*, 754 F.Supp. 378 (D.Vt. 1990); *but see United States v. One 1986 Chevrolet Van*, 927 F.2d 39, 44–45 (1st Cir.1991) (federal court had jurisdiction over forfeiture action as forfeiture in state criminal proceeding not in rem); *United States v. Winston–Salem/Forsyth County Bd. of Educ.*, 902 F.2d 267, 271 (4th Cir. 1990) (similar).

I conclude it would be inappropriate to dismiss this action at this time.

Although some courts of appeals have interpreted the rule of *Penn General* and *Princess Lida* as a firm jurisdictional edict that when a state or federal court has exercised in rem jurisdiction over a res, the other court cannot also have any jurisdiction based on the same res, *see, e.g., One 1985 Cadillac Seville*, 866 F.2d at 1146; *$79,123.49*, 830 F.2d at 97, I respectfully doubt whether the Supreme Court intended so broad and mechanical a rule, or would

rule today in accordance with claimant's argument. The Supreme Court did not state the rule so broadly. To the contrary, Mr. Justice Stone expressly stated that the first exercised jurisdiction is "exclusive only so far as ... exercise [of exclusive jurisdiction] is necessary for the appropriate control and disposition of the property.... The other court does not thereby lose its power to make orders which do not conflict with the authority of the court having jurisdiction...." *Penn General,* 294 U.S. at 198, 55 S.Ct. at 390; *accord Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946) ("[W]hile a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court") (citations omitted); *see also Princess Lida,* 305 U.S. at 467, 59 S.Ct. at 281 ("many cases ... hold that an action in the federal court to establish the validity or the amount of a claim constitutes no interference with a state court's possession or control of a res"); *United States v. Bank of New York & Trust Co.,* 296 U.S. 463, 477–78, 56 S.Ct. 343, 347, 80 L.Ed. 331 (1936). In *Penn General* it was impossible for both courts simultaneously to assert jurisdiction over the same res because the successful exercise of jurisdiction by each required the exclusion of the other. The res was an insolvent insurance company and the purpose of each of the two purported exercises of jurisdiction was to assert *exclusive* control over the management of the company's assets. The gist of the two competing orders was to oust the other from control of the res so that the court's receiver could exercise total control over the salvage efforts. The Supreme Court's opinion recognized the fundamental incompatibility of dual exercise of jurisdiction and ruled that the first exercise would be exclusive. *See* 294 U.S. at 198, 55 S.Ct. at 390. The circumstances in *Princess Lida* were simi-

lar. *See* 305 U.S. at 465–67, 59 S.Ct. at 280–81.

Here, in contrast, the federal court need not actually exercise control over the res in order to adjudicate rights in it. In *Fischer v. American United Life Ins. Co.,* 314 U.S. 549, 62 S.Ct. 380, 86 L.Ed. 444 (1942), the Supreme Court explained that a state or federal court "may properly adjudicate rights in property in possession" of another court

> and render any judgment "not in conflict with that court's authority to decide questions within its jurisdiction and to make effective such decisions by its control of the property." ... The appropriate exercise of the discretion of a federal court of equity may require it to refuse even to adjudicate rights in specific property if the state court has already undertaken such a determination. Furthermore, the federal court may not "seize and control the property which is in the possession of the state court" nor interfere with the state court or its functions. Short of that, however, the federal court may go.

*Id.* at 554, 62 S.Ct. at 383 (citations omitted). Because of the distinct issues presented by the federal and state actions here, I am convinced that any determination by this court "of the rights of the parties in the res could be had 'with proper regard for the rightful independence of the state governments in carrying out their domestic policy' and in full recognition of the necessity for 'harmonious cooperation of federal and state tribunals.'" *Fischer,* 314 U.S. at 555, 62 S.Ct. at 383 (citations omitted).

The rulings and judgments of this court need not in any way affect or interfere with the state court's jurisdiction over the res, or give rise to concerns of comity, *see Penn General Casualty Co.,* 294 U.S. at 195, 55 S.Ct. at 389; *One 1985 Cadillac Seville,* 866 F.2d at 1146, because, in an action of this nature, the federal court could stay the execution of its judgment as to the res and assert a lien that would result in seizure of the asset only upon its release from the state court's control. Pro-

ceeding in this fashion would entail no interference with the state court's exercise of its jurisdiction, and no discourtesy to the state court, nor insensitivity to considerations of comity. I conclude that this court may entertain this in rem action, notwithstanding the state court's prior exercise of in rem jurisdiction over the same asset. *Cf. Fischer*, 314 U.S. at 555, 62 S.Ct. at 383 ("Though binding on the parties, both as respects their rights to the fund and the collections thereon, [the federal court action] is not disruptive of orderly administration by the state courts nor conducive to unseemly collisions between the state and federal authorities.").

### Conclusion

The motion to dismiss for lack of jurisdiction is denied.

SO ORDERED.