**UNITED STATES of America, Plaintiff,**

v.

**$490,920 IN UNITED STATES CURRENCY, Defendant-in-rem.**

**No. 95 Civ. 8743 (LAP).**

United States District Court, S.D. New York.

Jan. 16, 1996.

Barbara A. Ward, Ellen Silverman Zimiles, Mary Jo White, U.S. Attorney, New York City, for U.S.

## MEMORANDUM AND ORDER

PRESKA, District Judge:

Plaintiff United States of America ("Government") filed this action pursuant to 18 U.S.C. §§ 981 and 1955 seeking civil forfeiture of defendant-in-rem $490,920 in United States currency ("Funds"). In this regard, the Government has applied for a warrant to seize the Funds upon their return to Fernando Márquez ("Mr. Marquez") and PM Pinebrook, Inc. ("PM Pinebrook") (collectively, "Claimants"), the owners of the Funds, pursuant to a pending state court order. Claimants have moved to dismiss the complaint with prejudice based on the lack of *in rem* jurisdiction, or, alternatively, to deny the requested seizure warrant because of the absence of probable cause. Further, Claimants argue that they are entitled to recover interest on the Funds and their reasonable expenses, including attorney's fees. For the reasons that follow, I dismiss the complaint without prejudice due to the lack of *in rem* jurisdiction, and deny all other requested relief.

## BACKGROUND

From 1992 until January 1995, the New York City Police Department ("NYPD") and the New York County District Attorney's Office ("D.A.'s Office") conducted a joint investigation of the illegal gambling activities of, *inter alia*, Robert Marquez, Raymond Marquez, and Peter Marquez. (Verified Complaint ("Compl.") ¶ 4.) Mr. Marquez is the father of Peter Marquez. (*Id.* ¶ 6.)

On January 12, 1995, based upon evidence obtained during this investigation, the NYPD and the D.A.'s Office applied for warrants to search sixty-nine locations. (*Id.*, Exh. A ("January 12 Warrant").) Justice Franklin Weissberg of the Supreme Court of the State of New York, County of New York signed these warrants on the same day. (January 12 Warrant, at 159.) One of the locations to be searched was 484 Pinebrook Boulevard, New Rochelle, New York, the residence of Mr. Marquez and corporate residence of PM Pinebrook. (*Id.* ¶¶ 188–191.) Mr. Marquez is President and the sole shareholder of PM Pinebrook. (Memorandum in Support of Claimants' Motion to Dismiss ("Supp. Memo."), at 2.)

On January 13, 1995, while searching 484 Pinebrook Boulevard, NYPD Officer Patricia Tierney witnessed Mr. Marquez, as he sat on a couch, drop three small envelopes containing safety deposit keys behind the couch. (Compl., Exh. B ("January 16 Warrant") ¶ 6.) The NYPD also recovered bank safety deposit account statements for three safety deposit boxes, held in the name of PM Pinebrook, located in two branches of National Westminster Bank. (*Id.*) The keys which Mr. Marquez dropped behind the couch opened these three safety deposit boxes. (Compl. ¶ 7.) While this search was in progress, Peter Marquez arrived at 484 Pinebrook Boulevard and was arrested on gambling related charges. (Supp.Memo., at 3 n. 2.)

On January 16, 1995, Justice Cataldo of the New York City Criminal Court signed warrants, at the application of the NYPD and the D.A.'s Office, providing for the search of, *inter alia*, the three safety deposit boxes at National Westminster Bank. (January 16 Warrant, at 7–8.) During the execution of these warrants, the NYPD seized $240,920 in United States currency from one box and $250,000 in United States currency from another box. This currency comprises the Funds at issue in the instant forfeiture action. (Compl. ¶ 12.)

On February 22, 1995, at the request of the D.A.'s Office, the Federal Bureau of Investigation ("FBI") commenced administrative forfeiture proceedings against the Funds. (Affidavit of FBI Special Agent Scott Moritz in Support of Seizure *In Rem* Warrant ("Moritz Aff.") ¶ 16.) The FBI served notice of these proceedings on April 10, 1995, and Claimants filed a claim on May 10, 1995. (*Id.* ¶ 17.) Accordingly, on July 6, 1995, the FBI referred the matter to the United States Attorney's Office for the Southern District of New York for judicial forfeiture. (*Id.*) Also in July 1995, Peter Marquez and Robert Marquez were convicted of gambling violations under New York

penal law.[1] (Compl. ¶ 9.)

On August 8, 1995, the D.A.'s Office filed a motion before Justice Weissberg for an order directing that

> property seized and currently held in the custody of the office of the New York County District Attorney be made available for inspection by the Office of the United States Attorney for the Southern District, and where requested, seized property be turned over to the office of the United States Attorney for the Southern District.

(Supp.Memo., Exh. 8.) On August 23, 1995, Claimants filed a cross-motion seeking the return of their seized property, including the Funds. (Supp.Memo, Exh. 9.)

At an October 2, 1995 proceeding, attended by Claimants, the D.A.'s Office, and the Assistant United States Attorney ("AUSA"), Justice Weissberg denied the D.A.'s Office's motion and granted Claimants' cross-motion. (Moritz Aff., Exh. H, at 12–13.) Justice Weissberg repeatedly stated that absent another pending action, he had no authority under New York's statutory warrant and seizure scheme, *see* N.Y.Crim.Proc.Law §§ 690.05–690.55 (McKinney 1995), to order the Claimants' seized property turned over to federal authorities. (Moritz Aff., Exh. H.) In a written order dated October 11, 1995 ("October 11 Order"), Justice Weissberg reiterated his order denying the D.A.'s Office's motion in its entirety and granting Claimants' motion in its entirety. (Supp.Memo., Exh. 10.) In this regard, Justice Weissberg ordered that "the personal property of Claimants, Fernando Marquez and PM Pinebrook, Inc., including the contents of the safe deposit boxes ... be forthwith released, relinquished and returned to Claimants." (*Id.*)

On October 11, 1995, after the issuance of Justice Weissberg's October 11 Order, the D.A.'s Office, the AUSA and Claimants appeared once again before Justice Weissberg. The D.A.'s Office requested a stay from the October 11 Order as it related to the Funds. (Moritz Aff., Exh. I.) The D.A.'s Office argued that, as it allegedly indicated in its motion papers, it turned the Funds over to federal authorities in January 1995 when it requested the FBI to commence an adoptive forfeiture. (*Id.* at 3.) The D.A.'s Office further stated that the AUSA decided not to serve a subpoena duces tecum on the state court clerk for the Funds, as the AUSA indicated it would during the October 2, 1995 proceeding. (*Id.* at 4.) Justice Weissberg denied the D.A.'s Office's requested relief, citing his lack of authority to issue the turnover order. (*Id.*)

The D.A.'s Office and the Claimants appeared before Justice Weissberg for the last time on October 12, 1995. Justifiably disturbed by the lack of compliance with his October 11 Order, Justice Weissberg stated that he was "about to bring a contempt proceeding against the District Attorney's Office." (Moritz Aff., Exh. J, at 12.) Further, Justice Weissberg learned that the federal authorities served a subpoena duces tecum for the Funds on the state court clerk after the October 11, 1995 proceeding, despite the D.A.'s Office's suggestion to the contrary during that proceeding. (Moritz Aff., Exh. J.) Justice Weissberg discussed his disappointment with the fact that neither the D.A.'s Office nor the AUSA indicated to him during the October 11, 1995 proceeding that "the U.S. Attorney intended to file a subpoena in an attempt to thwart my order." (*Id.* at 13.) Justice Weissberg characterized this conduct as "a disgraceful misuse of prosecutorial powers." (*Id.* at 17.) Further, Justice Weissberg annulled the subpoena because the federal authorities served it in the wrong place and it lacked the requisite filing fee. (*Id.* at 12, 17.)

In this context, on October 13, 1995, with Justice Weissberg's October 11 Order pending and the United States Marshals Service in custody of the Funds, the AUSA filed the instant complaint seeking civil forfeiture of the Funds. (Moritz Aff. ¶ 24.) The clerk of this Court then issued, according to Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Fed-

---

**1.** Peter Marquez entered into a plea agreement whereby he pled guilty to Promoting Gambling in the First Degree, a class E felony under New York penal law, and was sentenced to a conditional discharge. (Supp.Memo., at 3 n. 2.)

eral Rules of Civil Procedure, a warrant for the arrest of the Funds. (*Id.*)

On December 7, 1995, Claimants filed their Notice of Motion to dismiss the complaint with prejudice under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to direct the return of the Funds to Claimants, with interest, and to direct that plaintiff pay Claimants their reasonable expenses, including attorney's fees. (Notice of Motion.)

Based on the Government's concern "about a possible defect in *in rem* jurisdiction arising out of the initial seizure of the defendant-in-rem currency by state authorities and its subsequent transfer to federal custody for forfeiture," it has moved "for a judicially-approved *in rem* seizure warrant for the defendant-in-rem currency." (Government's December 7, 1995 Letter Brief ("Government Brief"), at 2.)

If the Court issues the warrant, the Government would return the funds to the D.A.'s Office, which would return them to the Claimant, at which time the Government would execute the arrest warrant *in rem.* The Government submits that such a procedure is supported by precedent and would cure the potential defect in *in rem* jurisdiction in this case. The proposed procedure would also allow the D.A.'s Office to comply with the state court order directing the return of the funds. Although applications for seizure warrants are usually made *ex parte*, the Government has made the instant application on notice to Claimant because the Court's decision should also resolve the issues presented by the pending motion to dismiss.

(*Id.*)

As conceded by the Government at oral argument on December 20, 1995, neither the Government nor the D.A.'s Office has either appealed Justice Weissberg's October 11 Order directing the return of the Funds to Claimants, or sought another order from Justice Weissberg, in light of the October 13, 1995 filing of the instant forfeiture action, to permit the D.A.'s Office to transfer the Funds to federal authorities.

## DISCUSSION

■ This action raises three issues: First, do the instant forfeiture action and the Government's request therein for a seizure warrant conflict with the "general rule that for 'proceedings in rem or quasi in rem ... the state or federal court having custody of ... property has exclusive jurisdiction to proceed?'" *Lankenau v. Coggeshall & Hicks,* 350 F.2d 61, 64 (2d Cir.1965) (quoting *Donovan v. City of Dallas,* 377 U.S. 408, 412, 84 S.Ct. 1579, 1582, 12 L.Ed.2d 409 (1964)). Second, assuming that no conflict exists with the rule of exclusive *in rem* jurisdiction, has the Government made an adequate showing of probable cause to justify the issuance of the warrant? Third, are Claimants entitled to recover their reasonable expenses, including attorney's fees, based on either the Government's failure to make a showing of probable cause to issue the seizure warrant, or the AUSA's abuse of the prosecutorial process?

Based on the following discussion, I dismiss the complaint without prejudice due to the lack of *in rem* jurisdiction, and deny all other requested relief.

### I. *In Rem Jurisdiction*

The issue of *in rem* jurisdiction arises from the failure of the state and federal authorities to secure a turnover order from Justice Weissberg, as provided by New York's warrant and seizure scheme, prior to transferring the Funds from state to federal custody in January 1995. According to this scheme, "[u]pon receiving property seized pursuant to a search warrant, the court must either: (a) [r]etain it in the custody of the court pending further disposition thereof ...; or (b) [d]irect that it be held in the custody of the person who applied for the warrant ..., *upon condition that upon order of such court such property be returned thereto or delivered to another court.*" N.Y.Crim.Proc.Law § 690.55(1) (McKinney 1995) (emphasis added).

Based on this failure to secure a turnover order, Claimants argue that the state court retains exclusive *in rem* jurisdiction over the Funds until the AUSA and D.A.'s Office comply fully with Justice Weissberg's October 11 Order directing the return of the seized

property. The instant forfeiture action, according to the Claimants, therefore should be dismissed with prejudice due to the absence of *in rem* jurisdiction.

I agree with Claimants that this action should be dismissed, albeit without prejudice, due to the lack of *in rem* jurisdiction.

## A. *New York's Warrant/Seizure Scheme is Jurisdictional*

■ First, New York's statutory warrant and seizure scheme, *see* N.Y.Crim.Proc.Law §§ 690.05–690.55 (McKinney 1995), is jurisdictional in nature. Although neither New York state courts nor the Court of Appeals has directly resolved this issue, I interpret New York's warrant and seizure scheme as providing the state court with *in rem* jurisdiction until such court relinquishes its jurisdiction upon full compliance with its final disposition order regarding the seized property.

New York's Criminal Procedure Law provides that "[a] search warrant is a court order and process directing a police officer ... to conduct: (a) a search of designated premises ... for the purpose of seizing designated property ..., and to deliver any property so obtained to the court which issued the warrant." *Id.* § 690.05(2)(a). "Upon receiving property seized pursuant to a search warrant, the court must either: (a) Retain it in the custody of the court pending further disposition thereof ...; or (b) Direct that it be held in the custody of the person who applied for the warrant ..., upon condition that upon order of such court such property be returned thereto or delivered to another court." *Id.* § 690.55(1).

■ Even if the court directs another person to retain custody of the property, the "property seized pursuant to a search warrant technically remains in the custody of the court, and the District Attorney or property clerk possesses the property only as an officer of the court, subject to the court's direction and disposition." *In re Documents Seized Pursuant to a Search Warrant,* 124 Misc.2d 897, 478 N.Y.S.2d 490, 494 (N.Y.Sup. Ct., N.Y.Co.1984), *quoted by Mansour v. Abrams,* 151 Misc.2d 121, 573 N.Y.S.2d 364,

368 (N.Y.Sup.Ct., Monroe Co.1991); *see Stuhler v. State of New York,* 127 Misc.2d 390, 485 N.Y.S.2d 957, 959–960 (N.Y.Sup.Ct., N.Y.Co.1985) (holding that Section 690.55 provides a state court with the "power to direct [the State of New York] to retain [seized property] pending distribution pursuant to a restitution plan"), *cited by United States v. Benitez,* 779 F.2d 135, 139 (2d Cir. 1985) (noting that Section 690.55 provides the court with "the power to retain custody of property seized pursuant to a search warrant").

New York's statutory scheme, therefore, provides that the disposition of the res is subject only to orders of the state court. This degree of control suggests that New York's warrant and seizure scheme is jurisdictional. *See Mandeville v. Canterbury,* 318 U.S. 47, 49, 63 S.Ct. 472, 473, 87 L.Ed. 605 (1943) (recognizing that "possession and control of the property ... are indispensable to the exercise of [in rem] jurisdiction"); *United States v. One 1987 Jeep Wrangler,* 972 F.2d 472, 477 (2d Cir.1992) (noting that "custody ... over the res" is the "elemental distinction of in rem jurisdiction which allows for jurisdiction").

Further, decisions from other circuits suggest that turnover order requirements are indicative of the jurisdictional nature of a state's warrant and seizure scheme. In *Scarabin,* for example, the United States Court of Appeals for the Fifth Circuit interpreted a Louisiana statute which provided that

> [w]hen property is seized pursuant to a search warrant, it shall be retained under the direction of the judge. If seized property is not to be used a [sic] evidence or is no longer needed as evidence, it shall be disposed of according to law, under the direction of the judge.

*Scarabin v. Drug Enforcement Admin.,* 966 F.2d 989, 994 (5th Cir.1992). State deputies executed a search warrant issued pursuant to this provision and seized, among other things, $12,360 in cash allegedly derived from drug dealing. *Id.* at 991. Three days later, the state officials, without the knowledge or authority of the state court, bought a cashier's check using the seized funds. *Id.* The

state authorities then transferred the cashier's check to the Drug Enforcement Administration ("DEA") for civil forfeiture under federal law. *Id.* Subsequently, the DEA proceeded to administratively forfeit the $12,360 cashier's check while purporting to forfeit the $12,360 seized. *Id.*

The court held that the forfeiture "never happened" because the DEA only had custody of the cashier's check, not the underlying currency. *Id.* at 993. Absent anything for the court to review, the court dismissed the appeal due to the lack of jurisdiction. *Id.* at 995.

> But even if this court were to ignore the DEA's recent confession that it never had physical control over the res—Scarabin's $12,360 in cash—we would nevertheless conclude that the DEA lacked in rem jurisdiction to forfeit Scarabin's property. From the moment of seizure the state district court had exclusive control over the res by virtue of issuing the search warrant that procured the seized funds and never relinquished that control to the DEA or any other agency or person. A federal agency cannot obtain jurisdiction over the res—and thus cannot find the res administratively forfeit—when a state court obtains jurisdiction first and never relinquishes that jurisdiction.

*Id.* at 993. The court expressly rejected the notion that "a state court may acquire in rem jurisdiction only through [the]— ... commencement of forfeiture proceedings in that court." *Id.* at 994. Further, the court stated that, under Louisiana's warrant statute, the "state court's control terminates when, but only when, the seized property is disposed of according to the law," and may not be defeated by "unsanctioned transfers by local police." *Id.* at 993. Accordingly, the court instructed the DEA, if it still wished to bring a forfeiture proceeding against the $12,360, to "first seek a turnover order from the state court, or wait until that court relinquishes control over the res, and then proceed anew." *Id.* at 995.

In *Madewell,* the United States Court of Appeals for the Eighth Circuit was confronted with a "conflict between state jurisdiction over seized property and federal adoptive forfeiture of that property." *Madewell v. Downs,* 68 F.3d 1030, 1041 (8th Cir.1995). The court discussed its prior holding that the "seizure of property pursuant to a [Missouri] state warrant does not establish exclusive state jurisdiction over the seized property preventing its voluntary transfer to federal authorities." *Id.* at 1042. Rather than disagreeing with the Fifth Circuit's contrary opinion in *Scarabin,* however, it clearly distinguished that case. *Id.* The Eighth Circuit based its holding on a fundamentally different state warrant and seizure scheme than that addressed by the Fifth Circuit. Missouri, unlike the Louisiana statutes at issue in *Scarabin,* had "no such jurisdictional element to its statutory warrant and seizure scheme, but instead approves of the voluntary turnover of seized property from state or local officials to federal agencies for commencement of forfeiture proceedings." *Id.* The court continued by noting that "[a]lthough Missouri now has a statute specifically requiring a turnover order from the court before transfer of property to federal control, it did not have such a statute at the time of the events in question here." *Id.* at 1042–43 (footnote omitted).

In *One 1987 Mercedes Benz,* the United States Court of Appeals for the Seventh Circuit affirmed a district court's dismissal of a forfeiture action based on the lack of *in rem* jurisdiction. *United States v. One 1987 Mercedes Benz,* 2 F.3d 241 (7th Cir.1993). Although state forfeiture proceedings were not instituted, the state officials transferred the Mercedes Benz to the DEA without obtaining the requisite state court turnover order. *Id.* at 242. In this regard, the court held that

> [l]acking a turnover order, federal authorities did not obtain lawful possession of the Mercedes. Indeed, their possession has been improper since the unauthorized transfer took place. As a result, the Mercedes was not properly before the district court, and thus the court had no jurisdiction to order the vehicle forfeited. Therefore, the district court's first dismissal for lack of *in rem* jurisdiction was correct, as was the order that the Mercedes be re-

turned to the Clerk of the Circuit Court of Cook County.

*Id.* at 243. The court stressed that, even if a state forfeiture proceeding was pending, its decision did " 'not turn upon who won the forfeiture "foot race" in the courts, but rather upon the fact that there is no authority for the type of transfer between executives of agencies that took place here.' " *Id.* at 243 (citation omitted).[2]

The United States Court of Appeals for the Ninth Circuit, in a related context, affirmed a district court's order forfeiting an automobile, and reversed and remanded an order forfeiting currency. *United States v. One 1985 Cadillac Seville,* 866 F.2d 1142, 1144 (9th Cir.1989). While state forfeiture proceedings against only the currency were pending, the DEA seized both the currency and automobile. *Id.*

With respect to the currency, the Ninth Circuit declined to " 'substitute a rule of force for the principle of mutual respect embodied in the prior exclusive jurisdiction doctrine.' " *Id.* at 1146 (citation omitted.) The court held that the district court should not have exercised *in rem* jurisdiction because the state forfeiture proceeding commenced prior to the federal proceeding, and the *"last recorded order of the state court . . . requires the money to be held by state authorities pending disposition."* *Id.* at 1145 (emphasis added). Absent "some affirmative act of abandonment" of the property by the state court, the state court retains exclusive jurisdiction over the res; it is not sufficient for state executive authorities to approve the federal seizure of the res, because the exclusive *in rem* jurisdiction rule was "intended to promote comity between *courts,* not executives." *Id.* (emphasis in original). With respect to the automobile, the court upheld district court jurisdiction because the "1985 Cadillac Seville automobile was the subject of neither the state forfeiture complaint *nor of any state court order."* *Id.* at 1146 (emphasis added).

The foregoing cases suggest that statutory turnover order requirements, such as Section 690.55 of New York's Criminal Procedure law, provide the state court with *in rem* jurisdiction which, absent compliance with the requirement, will defeat an attempt by another court subsequently to exercise *in rem* jurisdiction over the same res.

Although decisions of other circuits suggest that the institution of a state forfeiture action, rather than the issuance of a warrant, is necessary to obtain *in rem* jurisdiction, I do not find that these decisions are persuasive in the instant action. For example, the United States Court of Appeals for the First Circuit, in *One 1986 Chevrolet Van,* addressed a claimant's argument that a district court lacked *in rem* jurisdiction over res already subject to prior state proceeding. *United States v. One 1986 Chevrolet Van,* 927 F.2d 39, 44–45 (1st Cir.1991). The court disagreed by holding that the only state action pending was an *in personam* criminal action against the claimant. *Id.* at 44. In addition, the court stated that "[c]ontrary to Claimant's contentions, this conclusion is not altered by the fact that the car was seized following a search conducted pursuant to a state search warrant." *Id.* at 44–45. As recognized by the Fifth Circuit, however, the First Circuit "offers no explanation for its bald assertion that state court control begins with the commencement of state forfeiture proceedings," rather than the issuance of a warrant. *Scarabin,* 966 F.2d at 994.

In *Winston–Salem,* local police, pursuant to a state search warrant, seized various property in connection with violations of state controlled substances law. *United States v. Winston–Salem/Forsyth County Bd. of Educ.,* 902 F.2d 267, 269 (4th Cir. 1990). Although the state court ordered the police to return the seized cash to the criminal defendant, notice of the order was not delivered to the police department and, consequently, the DEA, at the request of the police, adopted the seizure of the cash. *Id.* North Carolina law, however, provided that

**2.** Since the statute at issue in *One 1987 Mercedes Benz,* "the Illinois General Assembly has amended the relevant statutes . . . to give State's Attorneys the power (concurrently with the state circuit courts) to dispose of contraband." *United*

*States v. Sixty–Two Thousand Six Hundred Dollars,* 899 F.Supp. 378, 379 (N.D.Ill.1995) (relying on this change to find jurisdiction in the federal court based on a prior transfer to federal authorities by a state attorney).

"property seized by a law enforcement officer must be kept 'under the direction of the court or magistrate as long as necessary to assure that the property will be produced at ... trial.'" *Id.* at 272 (quoting N.C.Gen. Stat. § 15–11.1(a) (1983)).

The United States Court of Appeals for the Fourth Circuit concluded that, because "the United States may adopt a state seizure when the person who seized the property had no authority to do so, ... 'it follows that the government may adopt a seizure where there was no authority to transfer the property'" to the federal authorities. *Id.* (citations omitted). The court's proposition regarding improper seizures, however, relies on authority that did not involve a competing state warrant or proceeding. *See United States v. One Ford Coupe Auto.*, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926). In fact, the seizing official was a federal official. *Id.* at 324, 47 S.Ct. at 155. ("[T]he federal prohibition director for Alabama had seized the automobile....."). Concerns of comity between the state and federal judiciaries, therefore, were not implicated.[3] The proposition regarding improper transfers, however, which the court based solely upon the one regarding improper seizures, directly implicates the concerns of comity. Contrary to the court's conclusion, therefore, the proposition regarding improper transfers does not simply "follow" from the one regarding improper seizures.

Finally, the United States Court of Appeals for the Sixth Circuit, in applying Michigan seizure and forfeiture law, held that the state courts did not have "exclusive jurisdiction [merely] because the res was seized by state authorities pursuant to a state search warrant." *United States v. Certain Real Property*, 986 F.2d 990, 994 (6th Cir.1993). The court held that according to the applicable Michigan forfeiture law, the institution of state court proceedings is required to confer *in rem* jurisdiction upon the state courts. *Id.* However, the court did not discuss the nature of Michigan's seizure laws (*i.e.,* whether it contained a turnover order requirement), and, therefore, this opinion fails

to shed light on New York's warrant and seizure scheme.

Based on the foregoing, I hold that New York's warrant and seizure scheme provides Justice Weissberg with *in rem* jurisdiction over the Funds until the D.A.'s Office and the Government comply with Justice Weissberg's October 11 Order.

### B. Civil Forfeiture/Seizure Warrant Invoke In Rem Jurisdiction

■ Second, it is not contested that the instant forfeiture action also is an *in rem,* rather than an *in personam,* action. "The conceptual basis of the [civil] forfeiture is, quite basically, that the property has perpetrated some wrong.... Thus, as the action is against the property and not the owner, the action is in rem in nature." *One 1987 Jeep Wrangler,* 972 F.2d at 476 (citations omitted).

Further, the Government's request for the *issuance* of a warrant to seize the Funds, regardless of its conditional nature, is one for this Court to exercise jurisdiction over the Funds. *See Scarabin,* 966 F.2d at 993 ("[T]he state district court had exclusive control over the res by virtue of *issuing* the search warrant that procured the seized funds....") (emphasis added). The conditional nature of the Government's requested relief is simply a result of the conflict between my issuance of a seizure warrant and Justice Weissberg's pending *in rem* jurisdiction.

### C. General Rule of Exclusive In Rem Jurisdiction

■ Third, " '[a] common-law rule of long standing prohibits a court, whether state or federal, from assuming in rem jurisdiction over a res that is already under the in rem jurisdiction of another court.'" *Chesley v. Union Carbide Corp.,* 927 F.2d 60, 66 (2d Cir.1991) (quoting *United States v. One 1985 Cadillac Seville,* 866 F.2d 1142, 1145 (9th Cir.1989)); *accord Donovan,* 377 U.S. at 412, 84 S.Ct. at 1582 ("[I]n cases where a court

---

**3.** *See infra* part I.C. (discussing the concerns of comity which underlie the general rule of exclu-

sive *in rem* jurisdiction).

has custody of property, that is, proceedings in rem or quasi in rem, ... the state or federal court having custody of such property has exclusive jurisdiction to proceed."); *China Trade and Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir.1987) ("A long-standing exception to the usual rule tolerating concurrent proceedings has been recognized for proceedings in rem or quasi in rem, because of the threat a second action poses to the first court's basis for jurisdiction."); *Lankenau*, 350 F.2d at 64 ("[W]here the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same res to defeat or impair the state court's jurisdiction.").

"The purpose of this rule [of exclusive in rem jurisdiction] is clear. It would be a most unseemly intrusion, inconsistent with the implications of federalism, were an order of one court to deprive the other court of its basis for jurisdiction and power to proceed." *Lankenau*, 350 F.2d at 64; *accord Mandeville*, 318 U.S. at 49, 63 S.Ct. at 473 (expressing the "necessity to prevent unseemly conflicts between the federal and state courts and to prevent the impasse which would arise if the federal court were unable to maintain its possession and control of the property, which are indispensable to the exercise of the jurisdiction it has assumed."); *Princess Lida v. Thompson*, 305 U.S. 456, 466, 59 S.Ct. 275, 280–81, 83 L.Ed. 285 (1939) ("The doctrine is necessary to the harmonious cooperation of federal and state tribunals."); *Chesley*, 927 F.2d at 66 ("'The purpose of the rule is the maintenance of comity between courts....'") (citation omitted); *see China Trade and Dev.*, 837 F.2d at 36 ("When a proceeding is in rem, and res judicata alone will not protect the jurisdiction of the first court, an anti-suit injunction may be appropriate.").

D. *Exception to Exclusive In Rem Jurisdiction*

■ Fourth, the exception to the rule of exclusive *in rem* jurisdiction does not apply to the facts of this case. The Government relies on *United States v. $3,000,000 Obligation of Qatar Nat'l Bank*, 810 F.Supp. 116 (S.D.N.Y.1993) to assert that even if New York's statutory scheme is jurisdictional, "two courts can exercise jurisdiction concurrently over the same *res* where the rulings and judgments of the second court do not interfere with the first court's jurisdiction over the *res* or give rise to concerns of comity." (Government Brief, at 4.)

A careful reading of *$3,000,000 Obligation* and the cases upon which it relies, however, demonstrates that although a second court may adjudicate rights in a res subject to a first court's *in rem* jurisdiction or issue other orders which are related to the res, this exception does not sanction a second court exercising its jurisdiction to interfere with the possession of res in the custody of the first court.

In *$3,000,000 Obligation*, the United States brought a forfeiture action under 18 U.S.C. § 981 against funds allegedly derived from an unlawful sale of aircraft parts to Libya. *$3,000,000 Obligation*, 810 F.Supp. at 116. In August 1989, one of the individuals involved in the illegal export scheme filed an action in New York state court and, by way of an order to show cause, sought to restrain the payment of the funds. *Id.* at 117. The court issued the temporary restraining order and, on April 24, 1990, issued a preliminary injunction enjoining payment of the funds to certain individuals involved in the export scheme. *Id.* In October 1990, the United States filed its forfeiture action against the funds. *Id.*

Although the claimant argued, as in the instant case, that the federal court lacked *in rem* jurisdiction over the funds, the court rejected this argument. The court relied on *Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935); *Princess Lida v. Thompson*, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939); *Fischer v. American United Life Ins. Co.*, 314 U.S. 549, 62 S.Ct. 380, 86 L.Ed. 444 (1942); and *Markham v. Allen*, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946) to deny the motion to dismiss for lack of jurisdiction. *Id.* at 117–119. The court held that the "first exercised jurisdiction is 'exclusive only so far as ... exercise [of exclusive jurisdiction] is necessary for the appropriate control and disposition of the property.'" *Id.* at 118 (quoting

*Penn General,* 294 U.S. at 198, 55 S.Ct. at 390).

The rulings and judgments of this court need not in any way affect or interfere with the state court's jurisdiction over the res, or give rise to concerns of comity, ... because, in an action of this nature, the federal court could stay the execution of its judgment as to the res and assert a lien that would result in seizure of the asset only upon its release from the state court's control.

*$3,000,000 Obligation,* 810 F.Supp. at 118.

In *Penn General,* the Supreme Court addressed jurisdiction over the liquidation of the business and affairs of an insolvent Pennsylvania insurance corporation. *Penn General,* 294 U.S. at 190, 55 S.Ct. at 387. Pennsylvania laws provided a comprehensive scheme for the insurance commissioner to liquidate insolvent domestic insurance corporations. *Id.* at 194, 55 S.Ct. at 388. The Court held that "even though the jurisdiction of the District Court had attached, the state court was not without power to designate the insurance commissioner as the vehicle of the state authority to control the property whenever that could be lawfully done." *Id.* at 198, 55 S.Ct. at 390. *In rem* jurisdiction, according to the Court, "is exclusive only so far as its exercise is necessary for the appropriate control and disposition of the property." *Id.*

In *Princess Lida,* the Supreme Court held that a state *quasi-in-rem* action over the administration of a trust provided the state court with exclusive jurisdiction, *Princess Lida,* 305 U.S. at 467, 59 S.Ct. at 281, thus preventing the exercise of jurisdiction in a subsequent federal action which was "brought for the same relief," *id.* at 468, 59 S.Ct. at 281. The Court held that the state court "could not effectively exercise the jurisdiction vested in it, without a substantial measure of control of the trust funds." *Id.* at 467, 59 S.Ct. at 281. The Court also referred, however, to the "many cases which hold that an action in the federal court to establish the validity or amount of a claim constitutes no interference with a state court's possession or control of a res." *Id.*

Similarly, in *Fischer,* the Supreme Court addressed the issue of whether, in a diversity action, a federal court had the "jurisdiction to determine a dispute between the Iowa receiver of American Life Insurance Co. on the one hand and the Michigan and Texas receivers on the other as respects to title to and the right to administer certain assets of the company in the possession of the Iowa receiver." *Fischer,* 314 U.S. at 551, 62 S.Ct. at 381 (footnote omitted). The potential jurisdictional conflict involved a prior Iowa state court action over the same controversy. In affirming the assumption of jurisdiction by the federal court, the Court held that "a state court may properly adjudicate rights in property in possession of a federal court and render any judgment 'not in conflict with that court's authority to decide questions within its jurisdiction and to make effective such decisions by its control of the property,'" and, therefore, the "same procedure may be followed by a federal court with respect to property in the possession of a state court." *Id.* at 554, 62 S.Ct. at 383 (citations and footnote omitted). The second court is limited only by the principle that it "may not seize and control the property which is in the possession of the state court nor interfere with the state court or its functions." *Id.* at 554, 62 S.Ct. at 383. The Court also noted that the Iowa receiver brought the federal action "with the approval of the Iowa court." *Id.* at 553, 62 S.Ct. at 382.

Finally, in *Markham,* the Supreme Court resolved the issue of "whether a district court of the United States has jurisdiction of a suit brought by the Alien Property Custodian against an executor and resident heirs to determine the Custodian's asserted right to share in decedent's estate which is in course of probate administration in a state court." *Markham,* 326 U.S. at 491–92, 66 S.Ct. at 297. In answering this issue affirmatively, the Court held that "while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, ... it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession." *Id.* at 494, 66 S.Ct. at 298 (citations omitted).

Although the foregoing cases qualify the absolute nature of the exclusive *in rem* jurisdiction doctrine, they leave unfettered the doctrine's underlying concern, based on comity, for respecting the first court's control over the res within its possession or custody. This concern mandates the denial of the Government's request for a seizure warrant in the instant action and the dismissal of the complaint.

Unlike *$3,000,000 Obligation* or the cases upon which it relies, the Government filed this complaint in the midst of its *intentional* violation of Justice Weissberg's October 11 Order regarding the possession and custody of the Funds. With each passing day, in other words, the Government and the D.A.'s Office are in further violation of an order that directly implicates the concerns of comity which lie at the core of the doctrine of exclusive *in rem* jurisdiction. Further, for reasons unarticulated, the Government chose not to appeal the October 11 Order or to renew its request of Justice Weissberg for a turnover order after filing the instant action on October 13, 1995.[4] Instead, the Government stands before this Court requesting an *in rem* seizure warrant in an attempt to cure what it concedes is a "potential defect in *in rem* jurisdiction." (Government Brief, at 5.) The Government's plea to the need to "vindicate its independent interest in seeking forfeiture of the funds" (*id.*) does not mask the reality of its willful and continuous violation of an order regarding the possession and custody of a res already subject to another court's jurisdiction. To encourage this ongoing violation is to render the concerns of comity a nullity. The Government's reliance on decisions which suggest that certain exercises of concurrent *in rem* jurisdiction are permissible is without merit and thus does not allay the concerns of comity.

The Government also relies on *One 1987 Jeep Wrangler* to support its argument that, in certain situations, "two courts can exercise jurisdiction concurrently over the same *res*." (Government Brief, at 4.) *See United States v. One 1987 Jeep Wrangler*, 972 F.2d 472 (2d Cir.1992). In that case, a county sheriff's department impounded a Jeep ancillary to an arrest for drug violations. *Id.* at 474. Pursuant to a DEA request, the sheriff's department transferred legal custody of the Jeep to the DEA, while retaining physical custody. *Id.* The criminal defendant ("Suspect") subsequently filed a motion in state court for the return of the Jeep. *Id.* Before this motion was decided, the DEA commenced an administrative forfeiture proceeding against the Jeep pursuant to 21 U.S.C. § 881(a)(4). *Id.* at 475. The state court then ordered the return of the Jeep, concluding that neither the state nor federal government had an interest in the vehicle. *Id.* Accordingly, the Jeep was physically returned to the Suspect. *Id.* Eight days later, without notice, the DEA seized the Jeep. *Id.* The Suspect then filed a motion to return the Jeep in a federal district court, arguing that the state court's return of the Jeep had a res judicata effect on the DEA and thereby prevented the DEA's seizure. *Id.* at 475–76. The district court denied the motion, concluding that the DEA's administrative forfeiture proceeding divested the federal court of jurisdiction. *Id.* at 474.

In affirming the district court, the Court of Appeals expressly noted that "the DEA did not pursue the civil forfeiture in this action until *after* the state court yielded jurisdiction," and, therefore, "the facts of this case reveal that there were *not* two simultaneous proceedings." *Id.* at 478 (emphasis added). Accordingly, *One Jeep Wrangler*, by its own terms, does not address concurrent *in rem* proceedings, as in the instant case, and the Government's reliance on *One Jeep Wrangler* is misplaced.

Having decided that the preceding exception to the general rule of exclusive *in rem* jurisdiction does not apply, the only alternative is to apply the general rule. Consequently, until Justice Weissberg relinquishes the state court's jurisdiction over the Funds upon full compliance with his October 11 Order or otherwise (for example, by entering

**4.** Recall that Judge Weissberg's primary rationale for not issuing the turnover which the D.A.'s Office requested in the October 2, 1995 proceed-

ing was the absence of another pending action. (Moritz, Exh. H.)

a turnover order), I may not exercise concurrent *in rem* jurisdiction over the Funds.

## II. *Recovery of Interest and Expenses*

Claimants also argue that they are entitled to recover interest on the Funds and their reasonable expenses, including attorney's fees. They rely on *$277,000 in United States Currency* and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (1994) in support of this argument.

■ In *$277,000 in United States Currency*, the United States Court of Appeals for the Ninth Circuit addressed the issue of the extent to which an owner of seized property, to which a court has held that the government has no claim, may recover for the loss of use of the seized property pending the court's judgment that the government had no claim. *United States v. $277,000 in United States Currency*, 69 F.3d 1491, 1492 (9th Cir.1995). The court held that seized funds deposited in the United States Treasury "should be considered as constructively earning interest at the government's alternative borrowing rate at all times" until a judgment is rendered in the case. *Id.* at 1496. This constructive interest, according to the court, becomes "part of the *res,* to be returned with the *res* to the claimant." *Id.*

In the instant action, however, the record indicates only that the United States Marshals Service retains custody over the Funds, not that the Funds have been deposited with the United States Treasury. (Moritz Aff. ¶ 24.) Further, no court has yet addressed the merits of the Government's forfeiture action to hold that the Government has no claim. Rather, due to my jurisdictional holding, I express no opinion on Claimants' argument regarding the absence of probable cause. For these reasons, Claimants' reliance on *$277,000 in United States Currency* to recover interest on the Funds is misplaced.

■ Similarly, Claimants are not entitled to recover any interest or expenses under the EAJA. Although Claimants' analysis of this issue consists primarily of a string citation of unexplained supposedly persuasive authority, it appears that Claimants rely on Section 2412(d)(1)(A) of the EAJA to recover these sums. Section 2412(d)(1)(A) provides for the award of fees and expenses to a prevailing party in an action brought by the United States "unless the court finds that the position of the United States was substantially justified." EAJA § 2412(d)(1)(A). Because I have not addressed the merits of the Government's forfeiture action, which the Government may refile after the state court relinquishes its jurisdiction, Claimants' motion to recover interest and expenses under the EAJA is denied.

Finally, Claimants attempt to buttress their request for interests and expenses by accusing the AUSA of abusing the prosecutorial process (*i.e.,* by filing this action in disregard of Justice Weissberg's October 11 Order) (Supp.Memo., at 23–25; Reply Memo., at 18–19). This issue, however, is more properly before Justice Weissberg, for no order of this Court has been violated.

## *CONCLUSION*

Accordingly, the complaint is DISMISSED without prejudice to refiling it after the state court relinquishes jurisdiction, and all other requested relief is DENIED.