United States Court of Appeals,

Fifth Circuit.

No. 91–4436.

JEFFREY M. SCARABIN, Petitioner,

v.

DRUG ENFORCEMENT ADMINISTRATION, Respondent.

July 24, 1992.

Petition for Review of an Order of the Drug Enforcement Administration.

Before POLITZ, Chief Judge, REYNALDO G. GARZA, and WIENER, Circuit Judges.

PER CURIAM:

Petitioner Jeffrey M. Scarabin is before us for yet a third time, still seeking to recover funds that were seized from his place of business during a narcotics search conducted pursuant to state warrant. Scarabin seeks to recover those funds from the Drug Enforcement Administration (DEA), the Respondent herein, which claims to have found them forfeit to the United States. Finding on the basis of undisputed facts that Scarabin's funds were never delivered to the DEA, we conclude that those funds remain in the exclusive possession of the Louisiana state court. But even if these funds had been in the actual possession of the DEA, we would find that the DEA lacked *in rem* jurisdiction to declare Scarabin's funds forfeit because the state court had exclusive legal control of the *res* by virtue of its search warrant and Louisiana law.

As the DEA never had control over the *res*—because it had neither actual physical possession of the *res* nor exclusive legal control over the *res* as required for *in rem* jurisdiction—the DEA had no authority to find Scarabin's funds forfeit. Therefore, as no forfeiture in fact occurred, there is no DEA forfeiture decision for this court to review. Holding that there is no basis for this court's jurisdiction under the facts of this case, we dismiss the appeal. In sum: no funds, ergo no forfeiture, ergo no jurisdiction. Q.E.D.

I. FACTS AND PROCEEDINGS

Most facts relevant to this case were discussed fully in our earlier decisions,[1] and we see no need to repeat them here in toto. Since our earlier decisions, however, we have received new and somewhat startling information about the relationship between the DEA and the Plaquemines Parish Sheriff's Office. This new information is therefore discussed here in full measure.

A. STATE SEIZURE AND FEDERAL FORFEITURE

On May 31, 1990, the Twenty–Fifth Judicial District Court for Plaquemines Parish, Louisiana, issued a search warrant authorizing deputies of the Plaquemines Parish Sheriff's Office to search for evidence of drug dealing at a marina facility owned by the Parish and operated by Scarabin, a parish employee. The deputies execut ed this warrant on June 1, 1990, finding and seizing, among other things, negligible evidence of drugs and $12,360 in cash belonging to Scarabin. A "return on the search warrant" listing the $12,360 in cash was filed with the clerk of the state district court. Under Louisiana law, property seized pursuant to a state warrant is retained under the issuing judge's control and direction until that judge disposes of it in accordance with state law.[2]

As a result of the deputies' search and seizure, Scarabin was arrested for and charged with first-offense possession of marijuana and possession of drug paraphernalia, both misdemeanors under Louisiana law.[3] Louisiana's comprehensive forfeiture statute does not allow civil forfeiture when the crimes charged concurrently are misdemeanors.[4] In any event, all charges against Scarabin were dismissed for lack of evidence on October 31, 1990.

---

[1] *Scarabin v. Drug Enforcement Admin.,* 919 F.2d 337 (1990) (*Scarabin I* ), rehearing denied, 925 F.2d 100 (5th Cir.1991) (*Scarabin II* ).

[2] *See* La.C.Cr.P. art. 167.

[3] *See* La.R.S. 40:966(D) and La.R.S. 40:1035, respectively.

[4] *See* La.R.S. 40:2603(1) (requiring act or omission punishable by confinement for more than one year).

In the meantime, however, on June 4, 1990, a mere three days after their search of the Parish marina and seizure of Scarabin's funds, the Sheriff's Office bought a cashier's check using Scarabin's $12,360. They did so without the knowledge, much less the authority, of the state court. The cashier's check was then handed over to the DEA for civil forfeiture under federal law. Ironically, this "moonlight transfer" took place on the same day—perhaps even at the same time—that the state district court ordered property seized pursuant to its May 31, 1990 warrant be held as evidence.

On July 2, 1990, purporting to act pursuant to 19 U.S.C. § 1607, the DEA sent Scarabin a Notice of Seizure outlining alternative procedures for contesting the civil forfeiture.[5] In addition, on July 11, 1990, notice of forfeiture was published in USA Today. On July 25, 1990, Scarabin filed a motion with the DEA for expedited release of his $12,360. The DEA denied this motion, explaining that expedited release is appropriate only when the property is seized in connection with possession of personal use quantities of drugs; according to the DEA, Scarabin's $12,360 had been seized as proceeds of drug sales. The DEA took the position that, technically, Scarabin had not challenged the forfeiture with the appropriate motion within the relevant time period. So, on August 16, 1990, the DEA proceeded to forfeit administratively the $12,360 from the cashier's check received from the Sheriff's Office, purporting to forfeit the funds actually seized from Scarabin.

On November 16, 1990, the DEA gave the Sheriff's Office $11,124 (or 90% of $12,360) under a federal statute that allows the DEA to return forfeited property to state or local law enforcement agencies that have participated directly in the seizure or forfeiture of that property. Thus, with the assistance of the DEA, the Sheriff's Office was able (at least for the time being) to circumvent Louisiana law that would have required it to return Scarabin's $12,360. NFL sportscasters might call the handoff from the Sheriff's Office to the DEA, followed by the lateral back from the DEA to the Sheriff Office, a "flea-flicker" play. Scarabin calls the arrangement between the

---

[5]Forfeiture proceedings arising out of drug offenses are governed by the same statutory provisions, 19 U.S.C. § 1595 *et seq.,* as apply to customs forfeitures. 21 U.S.C. § 881(d); *Bramble v. Richardson,* 498 F.2d 968, 969 (10th Cir.1974).

DEA and Sheriff's Office a "scam," "shell game," and "money laundering," and refers to the return of $11,124 to the Sheriff's Office as an "illegal kickback." We really cannot quarrel with those appellations. The DEA, more prosaically, refers to it as an "equitable sharing arrangement"[6]—admittedly a kinder, gentler euphemism, albeit one inappropriate here.

B. SCARABIN I and II

In *Scarabin I,* Scarabin filed a petition with this court for release of the $12,360 and for review of the DEA's administrative forfeiture decision pursuant to 21 U.S.C. § 877 and Fed.R.App.P. 15(a).[7] We recharacterized Scarabin's petition for expedited release as a petition for remission or mitigation under 28 C.F.R. § 9.5. We then invoked a narrow exception to the general rule that federal courts do not have jurisdiction to review the merits of a forfeiture decision, and ordered the DEA at least to *consider* Scarabin's remission and mitigation petition. In other words, we ordered the DEA to exercise its discretion.[8]

A rehearing on the jurisdiction issue was requested by the DEA. In our decision on rehearing, *Scarabin II,* this court reaffirmed that 21 U.S.C. § 877 provides jurisdiction for a direct appeal to the appellate courts from a denial of a petition for remission or mitigation by the DEA. In rejecting the DEA's argument that § 877 provides judicial review only for the Attorney General's decisions under the 1970 Controlled Substances Act affecting pharmaceutical and research industries, we explained that § 877 states that it "applies to all provisions "under this subchapter' " and "Section 881, 21 U.S.C. (forfeitures) is under "this subchapter'—Subchapter I, "Control and Enforcement.' "[9]

---

[6]*See* 21 U.S.C. § 881(e)(1)(A). Under § 881(e)(1)(A), the Attorney General may "transfer the [forfeited] property to any ... State or local law enforcement agency which participated directly in the seizure or forfeiture of the property." *See also* 21 U.S.C. § 881(e)(3).

[7]Fed.R.App.P. 15(a) sets out the process for obtaining appellate review of an order of an administrative agency.

[8]919 F.2d at 339.

[9]925 F.2d at 100–01.

In the administrative hearing that followed, Scarabin submitted considerable evidence to the DEA to show that the $12,360 in cash was not proceeds of drug transactions. Nevertheless, after reviewing Scarabin's materials and arguments, as per our order in *Scarabin I,* which we affirmed on rehearing in *Scarabin II,* the DEA denied Scarabin's petition for remission or mitigation. On May 28, 1991, Scarabin once again filed a petition with this court for review of the DEA's decision.

## II. ANALYSIS

In neither *Scarabin I* nor *Scarabin II* did the DEA ever favor this court with the critical fact that the Plaquemines Parish Sheriff's Office had used Scarabin's cash to purchase a cashier's check, and had then turned the check, not the seized cash, over to the DEA. Instead, we and Scarabin were allowed to labor under the misconception that the DEA had received the very cash seized at the Marina.

Now revealing these facts for the first time, the DEA urges a new legal theory to explain why this court lacks jurisdiction to review its denial of Scarabin's petition for remission or mitigation. The DEA now contends that we lack *in rem* jurisdiction because it (the DEA) "never seized this particular property nor was the property that was seized by the Plaquemines Parish Sheriff's Office, *i.e.,* the $12,360 [in] U.S. Currency, ever turned over to the DEA." The DEA also advances the alternative argument that the cashier's check for $12,360 constitutes the *res,* and was transferred out of this court's *territorial* jurisdiction when it was deposited into the United States Treasury. Hence, the DEA again concludes, this court is without *in rem* jurisdiction because, under the traditional rules of *in rem* jurisdiction, a court loses its jurisdiction if the *res* is removed from its territory.

The circuits disagree as to whether an appellate court retains jurisdiction over a forfeiture action even after the *res* is removed from that court's territorial jurisdiction. Some circuits have found the traditional rules of *in rem* jurisdiction inappropriate in situations, such as this one, in which the thing seized and forfeited is money, and thus merely an incorporeal entry in the Department of

Justice's account with the Department of Treasury.[10] Others have held that the government submitted to *in personam* jurisdiction when it brought the forfeiture suit in federal court.[11]

In this circuit, there is considerable tension, if not outright conflict, in our decisions on forfeiture jurisdiction.[12] Perhaps the best that can be said is that we have not expressly resolved these knotty issues. Fortunately, we need not do so in this case because neither the DEA nor Scarabin has argued that this court has *in personam* jurisdiction to review the DEA's administrative forfeiture decision. We do note in passing, however, that *An Article Consisting of 4,680 Pails* predates *U.S. v. $79,000* and therefore controls any conflict under our application of stare decisis.[13]

We are frankly astonished by the DEA's belated revelation that it never possessed or controlled Scarabin's $12,360 in cash, the *res* at issue in this case—particularly in light of the DEA's insistence that this case is controlled by traditional rules of *in rem* jurisdiction. Under the federal civil forfeiture statutes governing administrative forfeitures such as the one at issue here, the proceeding is *in rem* against the property.[14] Thus, like a court entertaining an *in rem* action, the federal agency undertaking the administrative forfeiture proceeding must have physical control over the property to be forfeit.

---

[10]*See U.S. v. $12,390,* 956 F.2d 801, 804 (8th Cir.1992); *U.S. v. $1,322,242.58,* 938 F.2d 433, 437–38 (3rd Cir.1991); *U.S. v. $25,721,* 938 F.2d 1417, 1420 (1st Cir.1991).

[11]*See U.S. v. $95,945,* 913 F.2d 1106, 1109 (4th Cir.1990); *U.S. v. Aiello,* 912 F.2d 4, 6–7 (2d Cir.1990), cert. denied ——— U.S. ———, 111 S.Ct. 757, 112 L.Ed.2d 777 (1991). *See also U.S. v. One Lear Jet Aircraft,* 836 F.2d 1571, 1580–84 (1988) (en banc) (dissents of Judges Vance and Clark). *See generally,* $12,390, 956 F.2d at 804 (noting two separate and distinct reasons for abandoning traditional rules of *in rem* jurisdiction).

[12]*Compare U.S. v. An Article Consisting of 4,680 Pails,* 725 F.2d 976 (5th Cir.1984) (release of *res* does not deprive court of jurisdiction) *with U.S. v. $79,000,* 801 F.2d 738 (5th Cir.1986) (per curiam) (jurisdiction derives entirely from control of *res* ).

[13]*See, e.g., Broussard v. Southern Pacific Transp. Co.,* 665 F.2d 1387, 1389 (5th Cir.1982) (en banc) (when two cases are inconsistent the older one is binding precedent).

[14]*See, e.g., U.S. v. Winston–Salem/Forsyth County Bd. of Educ.,* 902 F.2d 267, 271 (4th Cir.1990), ("Federal forfeitures under section 881 are civil in nature and are in rem proceedings."), citing *U.S. v. One 1985 Cadillac Seville,* 866 F.2d 1142, 1145 (9th Cir.1989).

As the DEA by its own admission never had control over Scarabin's $12,360, it could not lawfully have found the property forfeit under the rules of *in rem* forfeiture. Hence, contrary to the DEA's assertion, this forfeiture case is anything but moot—to be precise, it never happened. For all purposes of this case, the $12,360 in cash remains were it has always been, in Plaquemines Parish under the legal authority of the state district court.

But even if this court were to ignore the DEA's recent confession that it never had physical control over the *res*—Scarabin's $12,360 in cash—we would nevertheless conclude that the DEA lacked *in rem* jurisdiction to forfeit Scarabin's property. From the moment of seizure the state district court had exclusive control over the *res* by virtue of issuing the search warrant that procured the seized funds and never relinquished that control to the DEA or any other agency or person. A federal agency cannot obtain jurisdiction over the *res*—and thus cannot find the *res* administratively forfeit—when a state court obtains jurisdiction first and never relinquishes that jurisdiction.[15] Here, Louisiana's statutory law, La.C.Cr.P. art. 167, clearly and unequivocally (employing the mandatory "shall") provides that the state court asserts control over items seized pursuant to its warrant:

> When property is seized pursuant to a search warrant, it shall be retained under the direction of the judge. If seized property is not to be used a evidence or is no longer needed as evidence, it shall be disposed of according to law, under the direction of the judge.

Under art. 167, the state court's control terminates when, but only when, the seized property is disposed of according to law. Nothing in Louisiana's comprehensive forfeiture law indicates that forfeiture is an exception to art. 167, or that unsanctioned transfers by local police operate to defeat the state court's control over seized property.

We are also unconvinced by the DEA's contention that a state court may acquire *in rem*

---

[15]*U.S. v. $79,123,49,* 830 F.2d 94, 97 (7th Cir.1987). *See also Penn General Casualty Co. v. Pennsylvania,* 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935). *Cf. Winston–Salem,* 902 F.2d at 271 (no problem with jurisdiction as state forfeiture proceeding was *in personam,* while federal administrative forfeiture was *in rem* ).

jurisdiction only through a third party's commencement of forfeiture proceedings in that court. We recognize, of course, that the First and Eighth Circuits have determined, in *U.S. v. One 1986 Chevrolet Van,*[16] and *$12,390,*[17] respectively, that a state court does not acquire control over the *res* merely because the seizure took place pursuant to state warrant. But we do not find these decisions at all persuasive, at least for the purposes of the instant case. *$12,390* is distinguishable from the instant case because that court expressly found there to have been no encroachment on state law. And *One 1986 Chevrolet Van* offers no explanation for its bald assertion that state court control begins with commencement of state forfeiture proceedings. We discern no meaningful basis for such a distinction, especially when, as here, state law expressly provides jurisdiction as an integral element of its statutory warrant and seizure scheme.

The basic requirement of jurisdiction *in rem* (and *quasi in rem,* for that matter) is that a court must have exclusive possession or control over the property in order to consider the suit and grant or deny the relief sought.[18] The long-accepted purpose of this rule is to avoid conflicts in the administration of justice and the unseemliness of two courts vying simultaneously for control of the same property.[19] The need for this rule is in no way diminished, nor the conflict any less unseemly, when, as here, a state court is the first to obtain the power to dispose of property seized pursuant to its warrant and subsequently a federal agency attempts to assert power over the same property in order to find it forfeit to the United States.

## III. AD HOMINEM

A significant percentage of this court's time is devoted to reviewing cases, both civil and criminal, involving activity of the DEA and its agents. It is apparent to the members of this court that

---

[16]927 F.2d 39, 44–45 (1st Cir.1991).

[17]956 F.2d at 805–06.

[18]*See Penn General Casualty Co.,* 294 U.S. at 195, 55 S.Ct. at 389.

[19]*Id.; see also U.S. v. Klein,* 303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840 (1938).

our country is very well served by, and should be justly proud of, the vast majority of the field agents of the DEA whose loyalty, dedication, and conscientious efforts—which all too frequently place them in harm's way—are in the vanguard of law enforcement activities aimed at eradicating the drug scourge in this country. We are, therefore, doubly appalled at the harm done to the good reputations of those agents and that agency by the unconscionable and reprehensible policy implicated in this case, as adopted and implemented by officials of the DEA in positions of higher authority.

As was obvious at the oral argument of this appeal, each member of the court was deeply disturbed by the actions of the federal and state agents in appropriating Scarabin's money—candidly acknowledged by counsel for the DEA—actions that would have constituted illicit money laundering if perpetrated by private parties. We were even more distressed by the revelation that those activities were not merely condoned but were actively advocated and supported by officials of the DEA in positions to make and implement policy.

Of equal concern to this court was the fervor with which counsel for the DEA insisted that the untoward acts of those he represented were not merely legal but were in fact commendable. It is one thing to be a vigorous advocate and to present forcefully the *legal* basis for positions taken by one's clients; it is quite another to persist with vainglorious indignation, beyond the realm of credibility, in defending and even lauding indefensible behavior on the part of one's clients. We caution counsel to heed the distinction and trust that no more need be said.

## IV. CONCLUSION

Finding that Scarabin's $12,360 was never out of the legal control of the state court and thus was never in the possession of the federal government, we conclude that the DEA could not have found it forfeit. The administrative forfeiture of which the DEA informed Scarabin is a non-entity. If the DEA still insists on bringing forfeiture proceedings against Scarabin's funds, it must first seek a turn over order from the state court, or wait until that court relinquishes control over the *res,* and

then proceed anew, including the furnishing of timely notice to Scarabin. We therefore hold the obvious: as the DEA never actually undertook administrative forfeiture against Scarabin's funds, there is nothing for this court to review. Lacking jurisdiction, we dismiss the instant appeal. We do so, however, in the comfortable expectation that the state court proceeding—of which, by the way, there can be no dispute about its *in rem* jurisdiction—will come to a just and legally correct resolution of this unfortunate affair. And if, as we anticipate, the state court orders the Plaquemines Parish Sheriff's Department to return Scarabin's $12,360, we shall watch from the sideline with interest to see if the DEA struggles to retain its ill-gotten 10% laundering fee as strenuously as it has struggled to avoid returning any money to Scarabin.

This appeal is DISMISSED.