**UNITED STATES of America, Plaintiff,**

v.

**$490,920 IN UNITED STATES CURRENCY, Defendant-in-rem.**

**No. 95 Civ. 8743 (LAP).**

United States District Court,
S.D. New York.

Aug. 14, 1996.

Barbara A. Ward, Ellen Silverman Zimiles, Mary Jo White, U.S. Attorney, New York City, for plaintiff.

## MEMORANDUM AND ORDER

PRESKA, District Judge:

Plaintiff United States of America (the "Government") filed this action pursuant to 18 U.S.C. §§ 981 and 1955 seeking a warrant to seize defendant-in-rem $490,920 in United States currency (the "Funds") and seeking to forfeit the Funds to the United States Government. Fernando Marquez ("Mr. Marquez") and PM Pinebrook, Inc. ("PM Pinebrook") (collectively, "Claimants"), the owners of the Funds, filed a motion to dismiss the forfeiture action and to deny the requested seizure warrant. In a Memorandum and Order dated January 16, 1996, (the "January 16 Memorandum" or "January 16 Mem."), I denied the Government's request for the seizure warrant and dismissed its complaint without prejudice. The Government has moved for reconsideration of that part of the January 16 Memorandum which denied the seizure warrant. For the following reasons, the Government's motion is granted.

### BACKGROUND

The facts in this matter are set out in detail in my January 16 Memorandum. Having found there, *inter alia*, that the state court has exclusive *in rem* jurisdiction over the Funds, I denied the Government's request for a seizure warrant and granted Claimants' motion to dismiss the complaint without prejudice based on a lack of jurisdiction.

On January 23, 1996, the Government filed its motion to reconsider, relying on Rule 41 of the Federal Rules of Criminal Procedure, as incorporated by 18 U.S.C. § 981(b)(2)(B), and case law regarding anticipatory warrants to support the issuance of the seizure war-

rant. On January 31, 1996, I stayed, on the Government's motion, execution of the judgment based on my January 16 Memorandum until five days after resolution of the instant motion to reconsider.

On May 16, 1996, Claimants filed a motion in state court for criminal and civil contempt adjudications against an Assistant United States Attorney and an Assistant District Attorney for their failure to comply with Justice Weissberg's Order of October 11, 1995, requiring the Funds to be returned to Claimants (the "October 11 Order"). The Government removed the contempt proceeding to this Court on May 30, 1996 pursuant to 28 U.S.C. § 1442(a)(1). At present, that motion is pending.

The parties appeared for oral argument on the Government's motion to reconsider on May 31, 1996. Following oral argument, the Government returned to Justice Weissberg to request a turnover order. In support of that request, AUSA Ellen Silverman Zimiles, Chief of the Asset Forfeiture Unit, submitted an affirmation dated June 6, 1996 (the "Zimiles Affirmation") setting out the series of governmental mis-steps that brought the parties along their torturous path to their present positions. The parties appeared before Justice Weissberg for argument on June 11, 1996, and Justice Weissberg denied the Government's request.

Thereafter, the Government requested yet another oral argument in this Court for its motion to reconsider. That argument was held on July 19, 1996. In support of its continued request for an anticipatory seizure warrant, the Government provided me with the Zimiles Affirmation and the transcript of the parties' most recent appearance before Justice Weissberg (the "June 11 Tr.").

### DISCUSSION

The legal landscape surrounding this action is comprised of two overriding concerns. On the one hand, the federal government possesses an interest in the Funds by virtue of duly enacted forfeiture legislation. *See* 18 U.S.C. §§ 981, 1955. On the other hand, as a general rule, concerns of comity prohibit the maintenance of concurrent *in rem* proceed-

ings involving the same *res.* (*See* January 16 Mem. at 19–20.) These concerns tend to conflict, as in this action, during the transition between the conclusion of a state court's *in rem* jurisdiction over a *res* and the initiation of a federal court's *in rem* jurisdiction over the same *res* in a federal forfeiture proceeding. Meaningful vindication of the federal interest requires that the *res* be transferred to the jurisdiction of the federal court without the necessity of returning it to a party under circumstances where the party may abscond with it before the federal court is able to bring the *res* within its jurisdiction. Principles of comity, however, limit the ability of federal courts to interfere with the custody of the *res* prior to the state court's full relinquishment of its jurisdiction over the *res.*

My overriding concern in the January 16 Memorandum was that of comity—"respecting the first court's control over the *res* within its possession or custody." (January 16 Mem. at 25.) I found this concern to be implicated by the Government's requested relief for two reasons. First, I harbored reservations as to whether the procedural nightmare created by the Government's course of conduct was indeed a result of good faith efforts to comply with an admittedly arcane area of law,[1] or whether it was the result of a lack of appropriate deference for the jurisdiction of the state court. Second, my ruling sought to ensure that an incentive was not created for federal governmental entities to rely on similar procedures to avoid seeking appropriate turnover orders or to delay complying with state court orders regarding the possession and custody of a *res* within the state courts' jurisdiction and, in-

stead, attempt to seek refuge from such orders in federal courts. Accordingly, I held that "the *issuance* of a warrant to seize the Funds, regardless of its conditional nature, is one for this Court to exercise jurisdiction over the Funds," and, therefore, "until Justice Weissberg relinquishes the state court's jurisdiction over the Funds upon full compliance with his October 11 order or otherwise (for example, by entering a turnover order), I may not exercise concurrent *in rem* jurisdiction over the Funds [by authorizing a seizure warrant]." (January 16 Mem. at 19, 27.)

Upon reconsideration and in light of events which have transpired or been brought to my attention since my January 16 Memorandum, the Government's request for an anticipatory seizure warrant is granted.

## I. Concerns of Comity Have Been Allayed

■ As for the Government's frame of mind throughout these proceedings, I have, since my January 16 Memorandum, had the benefit of two oral arguments in connection with the motion to reconsider, one of which was presented by Deputy United States Attorney Shirah Neiman, and the Zimiles Affirmation, which comprehensively sets forth the Government's involvement and decision-making process throughout these proceedings. Unlike the situation in *Scarabin v. Drug Enforcement Administration*, 966 F.2d 989 (5th Cir.1992) where the United States Court of Appeals for the Fifth Circuit was so "appalled", "disturbed," and "distressed" by the conduct of the federal and state agents that it included a section in the opinion denominated "Ad Hominem", these subsequent arguments and the Zimiles Affirmation make it clear that the Government was proceeding in

---

1. The concept of *in rem* jurisdiction is an enigmatic one to say the least. As the Supreme Court in *Mullane* recognized almost one-half century ago,

> [d]istinctions between actions in rem and those in personam are ancient and originally expressed in procedural terms what seems really to have been a distinction in the substantive law of property under a system quite unlike our own.... The legal recognition and rise in economic importance of incorporeal or intangible forms of property have upset the ancient simplicity of property law and the clarity of its distinctions, while new forms of proceedings have confused the old procedural

classification. American courts have sometimes classed certain actions as in rem because personal service of process was not required, and at other times have held personal service of process not required because the action was in rem....

.... But in any event we think that the requirements of the Fourteenth Amendment to the Federal Constitution do not depend upon classification for which the standards are so elusive and confused....

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 312, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950).

this action in good faith, albeit under a mistaken view of a very difficult area of law. In fact, the Government has instituted new procedures in the United States Attorney's Office to ensure that its current predicament does not occur in the future. (Zimiles Aff. ¶ 8.)

As for the need to avoid establishing undesirable precedent, I am confident that my decision to issue the anticipatory seizure warrant will not serve as an incentive for the Government to thwart state court orders regarding the possession and custody of a *res* within those courts' *in rem* jurisdiction. In so ruling, I do not disregard the potential for abuse in these circumstances or, as Justice Weissberg characterized it, the potential for "reward[ing]" the governmental entities' "contemptuous conduct." (June 11 Tr. at 8–9.)

Instead, as noted above, I find that the Government attempted in good faith both to satisfy Justice Weissberg's October 11 Order and fulfill its prosecutorial responsibilities under the federal forfeiture statutes. Although Claimants understandably make much of the ten-month lapse of time since the October 11 Order, the Government promptly sought relief in this Court by filing its civil forfeiture complaint on October 13, 1995. The time between October 13 and now has been occupied by the parties' litigation (and re-litigation) of exceptionally difficult issues touching on bedrock constitutional concerns.

Further, other government entities are faced with a host of disincentives to relying on this decision as a pretext to justify bad faith maneuvering to thwart the *in rem* jurisdiction of state courts. Perhaps the greatest disincentive is Claimants' contempt motion, filed on May 16, 1996. Regardless of the merits of that motion (which is pending before me), the mere fact of being named as a defendant and having to defend such a motion is a deterrent to wandering down the path on which these parties have stumbled. In addition, the Government has no doubt expended substantial resources to seek its anticipatory seizure warrant, resources which far exceed those required in order simply to attain a turnover order in the first instance.

Finally, I note that during the June 11 hearing, Justice Weissberg, in a statesman-like gesture indicating his appreciation for the principles of comity burnished by his decade of distinguished judicial service, admonished the governmental parties to seek an anticipatory warrant to thereby allow compliance with his October 11 Order. He stated:

All you have to do is comply with my order. Turn the money over. *If you think you're entitled to an anticipatory seizure order, get it.* It's simpler than litigating and minimizes any contempt penalties against [the Assistant District Attorney] and [the Assistant United States Attorney].

\*    \*    \*    \*    \*    \*

There is somebody in the courtroom who can certainly achieve that result if they wish to.

(June 11 Tr. at 17–18 (emphasis added).) By thus indicating his preference for the governmental parties to seek precisely the type of relief being sought, Justice Weissberg has further allayed my concerns about comity.

The foregoing, including the Government's good faith, the disincentives to repeating this scenario, and Justice Weissberg's express endorsement of the Government's requested seizure warrant, makes me confident that this ruling will not encourage or facilitate the type of reprehensible conduct related in *Scarabin*. Accordingly, now sanguine that I am not trenching upon state interests which comity compels me to respect, I turn to the other interest at issue here, that of the federal government in the forfeiture of the Funds.

## II.   *The Anticipatory Seizure Warrant*

The Government's proposed anticipatory seizure warrant is expressly conditioned on first complying with Justice Weissberg's October 11 Order requiring the return of the Funds to Claimants. The conditional nature of this warrant serves both of the competing interests at issue in this dispute; it serves the interest of comity by delaying the Government's seizure of the Funds until after Justice Weissberg's October 11 Order has been complied with and the state court's

jurisdiction thus has ended, and it serves the interests of the federal government by permitting a seizure without enhancing the possibility that Claimants may abscond with the Funds (which Claimants have candidly acknowledged they will do if given the chance) before the federal court is able to exercise its jurisdiction.

### A. Propriety of an Anticipatory Warrant

■ The Government's briefing on its motion to reconsider my January 16 Memorandum establishes the permissibility of issuing a seizure warrant in anticipation of the time when the *res* is available for arrest or seizure (*i.e.*, upon full compliance with Justice Weissberg's October 11 Order). Federal forfeiture law provides that the Attorney General may obtain a seizure warrant "pursuant to the Federal Rules of Criminal Procedure." 18 U.S.C. § 981(b)(2)(B). Rule 41 of the Federal Rules of Criminal Procedure provides this Court with the authority to issue search and seizure warrants. Further, the Court of Appeals has repeatedly recognized the permissibility of issuing a warrant whose execution is conditioned upon the satisfaction of events necessary to render the warrant constitutional.

In *Garcia*, the Court squarely confronted the issue of "whether government agents may obtain from a magistrate an anticipatory search warrant conditioned upon future events which, if fulfilled, would create probable cause and allow a search of the premises identified in the warrant." *United States v. Garcia*, 882 F.2d 699, 700 (2d Cir.), *cert. denied*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). The Court held that "when a government official presents independent evidence indicating that delivery of contraband will, or is likely to, occur, and when the magistrate conditions the warrant on that delivery, there is sufficient probable cause to uphold the warrant." *Id.* at 702. The primary inquiry, therefore, is whether " 'there is probable cause to believe that [the contraband] will be there when the search warrant is executed.' " *Id.* (citation omitted). If the "the necessary events ... do not transpire, the warrant is void." *Id.* The Court recognized that the "the time required to

obtain a warrant" is "one of the major practical difficulties that confronts law enforcement officials" because of the resulting "risk [of] losing both criminal and contraband." *Id.* at 703. The Court has repeatedly reaffirmed the principles established in *Garcia*. *See, e.g., United States v. Moetamedi*, 46 F.3d 225, 228–29 (2d Cir.1995); *Rivera v. United States*, 928 F.2d 592, 603 (2d Cir. 1991).

I find that the foregoing authority justifies issuance of an anticipatory seizure warrant in the instant action. Just as the Court in *Garcia* upheld the propriety of issuing a warrant conditioned on delivery of the contraband to the premises to be searched, thus satisfying the Fourth Amendment requirement of probable cause, I may issue a warrant conditioned on compliance with Justice Weissberg's October 11 Order, thus satisfying the broader constitutional requirement of comity implicated in the context of concurrent *in rem* proceedings.

### B. Probable Cause for the Warrant

■ Finally, I find that probable cause exists to issue the anticipatory seizure warrant. In civil forfeitures, "to establish probable cause, the government must have 'reasonable grounds' to believe the property is subject to forfeiture, and that these grounds must rise above the level of 'mere suspicion.' " *United States v. Daccarett*, 6 F.3d 37, 55 (2d Cir.1993), *cert. denied*, 510 U.S. 1191, 114 S.Ct. 1294, 127 L.Ed.2d 648 (1994). However, this standard does not require the Government to prove a "substantial connection" between the property to be forfeited and the criminal activity. *Id.* Instead, "the government must demonstrate only a 'nexus' between the seized property and illegal ... activity." *Id.* at 56.

■ In the context of funds in a bank, the Government may satisfy its burden by establishing "that there is probable cause to believe the funds represent proceeds traceable to [illegal] transactions." *Id.* In other words, "[t]he government must establish 'reasonable grounds,' based on more than 'mere suspicion,' that the funds are subject to forfeiture." *Id.* "[I]t is not required to link the monies to any one particular transac-

tion." *Id.* Further, "[a] finding of probable cause may be based on hearsay, even hearsay from confidential informants, ... or circumstantial evidence ...," particularly in cases involving bank accounts, money, or other fungible assets." *Id.* In the end, "[w]hether probable cause exists must be determined on the basis of the totality of the circumstances." *In re Seizure of All Funds in Accounts in the Names Registry Publishing, Inc.*, 68 F.3d 577, 580 (2d Cir.1995).

█ In the instant case, the totality of circumstances demonstrates probable cause to believe the Funds represent proceeds traceable to illegal gambling activities. From 1992 to January 1995, New York State authorities conducted an investigation into the illegal gambling activities of Robert Marquez, Raymond Marquez, Peter Marquez, and their associates (the "Marquez Organization"). (Affidavit of Special FBI Agent Scott Moritz in Support of Seizure *In Rem* ("Moritz Aff.") ¶ 2.) The Federal Bureau of Investigation ("FBI") commenced its investigation in April 1994. (*Id.* ¶ 3.) These investigations revealed that the Marquez Organization was involved in a large-scale illegal gambling business utilizing over 60 locations, employing at least 100 people, and generating approximately $31 million in gross revenue. (*Id.* ¶ 6.) In July 1995, Peter Marquez and Robert Marquez were convicted of Promoting Gambling in the First Degree in violation of New York Penal Law § 225.20(2). (*Id.* ¶ 10.) Thus, as Claimants concede, "it certainly is true that Mr. Marquez' son [Peter] has been associated with [unlawful gambling] activity." (Claimants' Memorandum in Support of Motion to Dismiss ("Claimants' Supp. Memo.") at 15.) Further, members of the Marquez Organization have been surveilled relying on other persons and entities in the operation of their illegal gambling enterprise. (*See, e.g.*, Moritz Aff., Ex. A ¶¶ 27, 30 (using a 1991 Toyota registered to Carolyn Mariani); *id.*, Ex. A ¶ 111 (using a cellular phone listed to NCDI Realty Corporation).)

Claimant Mr. Marquez is the father of Peter Marquez. (*Id.* ¶ 7.) Mr. Marquez resides at 484 Pinebrook Boulevard, New Rochelle, New York ("484 Pinebrook"). (*Id.*) He is President and the sole shareholder of claimant PM Pinebrook (Claimants' Supp. Memo. at 2) and has a history of engaging in illegal gambling activities (Moritz Aff. ¶ 15). A Dun & Bradstreet search revealed no listing for PM Pinebrook, indicating to the FBI that PM Pinebrook is not actually engaged in the conduct of business. (Moritz Aff. ¶ 14.)

Next, state authorities have observed Peter Marquez traveling from the Marquez Organization's principal location to 484 Pinebrook (*id.* ¶ 7); automobiles of Peter Marquez are registered to 484 Pinebrook (*id.*); an account application to PaineWebber listed Peter Marquez as Vice President of claimant PM Pinebrook (*id.* ¶ 11); and Peter Marquez arrived at 484 Pinebrook during the execution of a state search warrant for these premises (*id.* ¶ 10).

Finally, during this search of 484 Pinebrook, a New York City Police Officer observed Mr. Marquez drop three small envelopes containing safety deposit box keys behind a couch. (*Id.* ¶ 8.) These keys opened the boxes at National Westminster Bank, held in the name of PM Pinebrook, in which defendant-in-rem $490,920 in United States currency was found, earning no interest. (*Id.* ¶¶ 8, 12, 13.) Based on the foregoing, I find that probable cause exists to believe that the Funds represent proceeds traceable to illegal gambling activities and are subject to forfeiture under 18 U.S.C. §§ 981 and 1955.

### CONCLUSION

The Government's motion for reconsideration is granted and its anticipatory seizure warrant will issue.

SO ORDERED.