103 F.3d 902
 96 Cal. Daily Op. Serv. 9440, 96 Daily Journal
D.A.R. 15,493
UNITED STATES of America, Plaintiff-Appellee,
v.
$46,588.00 IN U.S. CURRENCY AND $20.00 IN CANADIAN CURRENCY,
more or less, and all proceeds therefrom, Defendant,
Juliana Miriam Steernberg, Claimant-Appellant.
 No. 94-35478.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 7, 1995.
Decided Dec. 26, 1996.
 
 Victor V. Hoff, Mikkelborg, Broz, Wells & Fryer, Seattle, WA, for claimant-appellant.
 Peter O. Mueller and Lawrence Lincoln, Assistant United States Attorneys, Seattle, WA, for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Washington, Thomas S. Zilly, District Judge, Presiding. D.C. No. CV-93-00240-TSZ.
 Before: FLETCHER, KOZINSKI, and LEAVY, Circuit Judges.
 LEAVY, Circuit Judge:
 
 
 1
 Juliana Miriam Steernberg ("Steernberg") appeals a summary judgment forfeiting currency to the United States. The U.S. Border Patrol seized the currency from Steernberg and handed it over to the Drug Enforcement Agency ("DEA"). The DEA replaced the currency with a cashier's check, and delivered the check to the U.S. Marshal who deposited it in the Seized Asset Deposit Fund. The government then filed this judicial forfeiture action. The question to be decided is whether the substitution of the cashier's check for the currency by a DEA agent before delivery to the Marshal prevented the district court from gaining in rem jurisdiction. We have jurisdiction under 28 U.S.C. § 1291, and we hold that the district court had in rem jurisdiction. We affirm.
 
 FACTS
 
 2
 On April 8, 1992, U.S. Border Patrol agents arrested Steernberg, a Canadian citizen, for drug and currency violations while she was waiting outside the terminal at the Bellingham, Washington, airport. The agents seized $46,588 in U.S. currency and $20 in Canadian currency from Steernberg, who had entered the United States that morning and had not filed a report declaring the currency as required by 31 U.S.C. § 5316.[1]
 
 
 3
 The Border Patrol agents notified the DEA and the U.S. Customs Service ("Customs") of Steernberg's arrest. The Border Patrol agents took Steernberg and the currency to their office where they handed the currency over to a DEA agent. The DEA agent, either that same day or the following day, photographed the currency, then exchanged it for a cashier's check at a local bank. The DEA sent the check to the U.S. Marshal's Service for deposit in the Seized Asset Deposit Fund.
 
 
 4
 A Customs agent talked to Steernberg while she was at the Border Patrol Office, but Customs had no further involvement.
 
 
 5
 On May 4, 1992, the DEA initiated an administrative forfeiture proceeding.[2] Steernberg was advised that she could request remission or mitigation of the forfeiture, and that she could contest the forfeiture.[3] Steernberg submitted a claim of ownership and cost bond, thereby requiring the DEA to refer the seizure to the U.S. Attorney's office for a contested judicial forfeiture proceeding.[4] Steernberg also submitted a petition for remission or mitigation to the DEA. On October 19, 1992, the U.S. Attorney received the DEA's recommendation that the petition for remission be denied.
 
 
 6
 The government filed this civil forfeiture action on February 22, 1993, under both the drug forfeiture provision, 21 U.S.C. § 881(a)(6), and the currency forfeiture provisions, 31 U.S.C. §§ 5316 and 5317(c). A warrant of arrest in rem was issued directing the U.S. Marshal to arrest the defendant currency and all proceeds therefrom. The warrant was executed by the transfer of $46,604.62 from the Marshal's Seized Asset Deposit Fund to the Marshal's Judicial Seizure Fund. Thereafter, the district court granted the government's motion for summary judgment for civil forfeiture, based upon a violation of the currency laws, 31 U.S.C. § 5317(c). Steernberg timely appealed.
 
 Standard of Review
 
 7
 We review the district court's interpretation of federal forfeiture law de novo. United States v.1980 Lear Jet, Model 35A Serial No. 277, 38 F.3d 398, 400 (9th Cir.1994).Discussion
 
 
 8
 A civil forfeiture proceeding is an action in rem, and the court must have actual or constructive control of the res when a forfeiture proceeding is initiated. Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 84, 87, 113 S.Ct. 554, 558-59, 121 L.Ed.2d 474 (1992).
 
 
 9
 The Attorney General has issued a directive to government agents instructing that "all currency" seized is "to be delivered to the United States Marshals Service for deposit into the Marshal's Seized Asset Deposit Fund."[5] The Attorney General cited the security, budgetary, and accounting problems caused by retention of large amounts of seized currency.
 
 
 10
 The Seized Asset Deposit Fund was authorized by 28 U.S.C. § 544(c) for the purpose of holding seized cash pending forfeiture. See United States v. $277,000 U.S. Currency, 69 F.3d 1491, 1494 (9th Cir.1995) ("This account is authorized by 28 U.S.C. § 524(c), which establishes a fund to hold assets after they have been forfeited [the Asset Forfeiture Fund, § 524(c)(1) ], and 'holding accounts' for assets before forfeiture, § 524(c)(5).").[6]
 
 
 11
 In this case, the DEA agent took the seized currency to a local bank and exchanged it for a cashier's check. The check, instead of the seized currency, was sent to the U.S. Marshal's Service for deposit into the Seized Asset Deposit Fund. The government therefore followed policy directive, with the exception of delivering a cashier's check, instead of the currency, to the Marshal for deposit.
 
 
 12
 Steernberg argues that when the currency was exchanged for a cashier's check, the currency, which is the res, "disappeared into the banking system and is no longer identifiable." We reject that argument because, in this case, the cashier's check was an appropriate, fungible surrogate for the seized currency. See United States v. $57,480.05 U.S. Currency and Other Coins, 722 F.2d 1457, 1459 (9th Cir.1984) ("The bank credit of fungible dollars constituted an appropriate substitute for the original res."); Madewell v. Downs, 68 F.3d 1030, 1042, n. 14 (8th Cir.1995) ("[c]urrency, cashier's checks, and bank deposits are simply surrogates for each other, and in modern society are certainly regarded as 'fungible' "). The res remained identifiable and within the court's jurisdiction. The funds in the Seized Asset Deposit Fund were properly arrested.
 
 
 13
 The government filed this forfeiture action under both the drug forfeiture provision, 21 U.S.C. § 881(a)(6), and the currency forfeiture provisions, 31 U.S.C. §§ 5316 and 5317(c). Steernberg argues that the district court erred in granting the government's motion for summary judgment based solely on the currency violations because Customs did not provide the remission proceedings. She asserts that Customs administers the currency forfeiture provisions in 31 U.S.C. § 5317(c), therefore, Customs, rather than the DEA, must offer the remission proceedings which she requested.
 
 
 14
 We reject Steernberg's argument. The Border Patrol seized Steernberg's currency and immediately notified both Customs and the DEA. Customs talked to Steernberg, but had no further involvement. The DEA took possession of the currency. Because Customs did not seize or take possession of the currency, it had no authority or obligation to offer remission proceedings.[7] Moreover, the drug forfeiture statute, 21 U.S.C. § 881, incorporates all of the provisions of law relating to customs seizures and forfeitures, including remission or mitigation procedures, to seizures and forfeitures made pursuant to the drug forfeiture statute. That statute further directs that these duties shall be performed by such persons as may be designated for that purpose by the Attorney General, except seizures "effected" by customs officers. See 21 U.S.C. § 881(d).[8]
 
 
 15
 Finally, we reject Steernberg's argument that the currency forfeiture statute, 31 U.S.C. § 5317(c), can be invoked only pursuant to a customs seizure.[9] Nothing in the language of that statute supports this argument.
 
 
 16
 For the reasons stated above, the judgment is AFFIRMED.
 
 
 
 [1]
 31 U.S.C. § 5316(a) provides in part:
 (a) Except as provided in subsection (c) of this section, a person or an agent or bailee of the person shall file a report under subsection (b) of this section when the person, agent, or bailee knowingly--
 (1) transports ... monetary instruments of more than $10,000 at one time--
 (A) from a place in the United States to or through a place outside the United States; or
 (B) to a place in the United States from or through a place outside the United States[.]
 
 
 [2]
 The Comprehensive Drug Abuse Prevention and Control Act of 1970, codified as amended at 21 U.S.C. §§ 801-896, provides for civil forfeitures of property that either has been used to facilitate illegal drug transactions or is the proceeds of such drug activity. The civil forfeiture statute, 21 U.S.C. § 881, incorporates the procedures which govern customs forfeitures. See 21 U.S.C. § 881(d). The customs laws permit "administrative forfeitures" of property valued at $500,000 or less. See 19 U.S.C. §§ 1607-1609; 21 C.F.R. §§ 1316.75-77. Under this procedure, the seizing agency must publish notice of its intent to forfeit and must send written notice of seizure to each party who appears to have an interest in the seized article. See 19 U.S.C. § 1607(a); 21 C.F.R. § 1316.75
 
 
 [3]
 To contest the forfeiture, a claimant must file a claim of ownership and cost bond with the DEA pursuant to 19 U.S.C. § 1608 and 21 C.F.R. § 1316.76
 
 
 [4]
 Once the forfeiture is contested, the proceeding must be referred to the U.S. Attorney's office for judicial forfeiture proceedings. See 19 U.S.C. § 1608 and 21 C.F.R. § 1316.78
 
 
 [5]
 Attorney General Policy Directive No. 87-1, dated March 13, 1987, provides:
 Subject: Seized Cash
 To: All United States Attorneys and Criminal Division Section Chiefs; Administrator, DEA; Director, FBI; Commissioner, INS; Director, USMS
 From: Stephen S. Trott, Associate Attorney General
 The security, budgetary, and accounting problems caused by retention of large amounts of cash is causing great concern within the Department and the Congress. A just released GAO report has estimated that there is $220 million in cash being retained by various federal law enforcement agencies. Consequently, effective May 1st, all currency seized which is subject to criminal forfeiture or to civil forfeiture, is to be delivered to the United States Marshals Service (USMS) for deposit in the USMS Seized Asset Deposit Fund either within sixty days after seizure or ten days after indictment, whichever occurs first. Where appropriate, photographs of videotapes of the seized cash should be taken for later use in court as evidence.
 Limited exception to this directive, including extensions of applicable time limits, will be granted, on an interim basis, only with the express written permission of the Assistant Attorney General, Criminal Division, and are to be sought through the Asset Forfeiture Office, Criminal Division. Retention of currency will be permitted when retention of that currency, or a portion thereof, serves a significant independent, tangible, evidentiary purpose due to, for example, the presence of fingerprints, packaging in an incriminating fashion, or the existence of a traceable amount of narcotic residue on the bills. If the amount of a seizure is less than $5,000, permission need not be sought from the Criminal Division for an exception, but any exception granted is to be granted at a supervisory level within a United States Attorney's Office using the above criteria.
 The co-mingling of cash seized by the government under 21 U.S.C. § 881(a)(6), will not deprive the court of jurisdiction over the res. Unlike other assets seized by the government (e.g. real property, conveyances), cash is a fungible item. Its character is not changed merely by depositing it with other cash. While it is true that the jurisdiction of the court is derived entirely from its control over the defendant res, court jurisdiction does not depend upon control over specific cash. As stated in United States v. $57,480.05 United States Currency and Other Coins and $10,575.00 United States Currency, 722 F.2d 1457 (9th Cir.1984), " ... jurisdiction did not depend upon control over specific bits of currency. The bank credit of fungible dollars constituted an appropriate substitute for the original res." This has been a time-honored practice in the area of civil forfeiture law. See, American Bank of Wage Claims v. Registry of the District Court of Guam, 431 F.2d 1215 (9th Cir.1970).
 Please review your existing cases and property storage sites and make all required transfers or requests for exemption by May 1, 1987.
 Thank you for understanding the immediate necessity for this directive....
 (Footnotes omitted.)
 
 
 [6]
 28 U.S.C. § 524(c)(5) provides:
 Amounts in the Fund, and in any holding accounts associated with the Fund which are not currently needed for the purpose of this section shall be kept on deposit or invested in obligations of, or guaranteed by, the United States and all earning on such investments shall be deposited in the Fund.
 (Emphasis added.)
 
 
 [7]
 See 19 U.S.C. § 1600: "The procedures set forth in sections 1602 through 1619 of this title shall apply to seizures of any property effected by customs officers ...." (emphasis added)
 
 
 [8]
 21 U.S.C. § 881(d) provides:
 The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof; except that such duties as are imposed upon the customs officer or any other person with respect to the seizure and forfeiture of property under the customs laws shall be performed with respect to seizures and forfeitures of property under this subchapter by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General, except to the extent that such duties arise from seizures and forfeitures effected by any customs officer.
 
 
 [9]
 Steernberg cites 31 C.F.R. § 103.46(b)(7) for her assertion that 31 U.S.C. §§ 5316 and 5317 are administered by Customs. That regulation confers authority to Customs to examine institutions to determine compliance with respect to currency reports and currency forfeitures. It does not require Customs alone to administer sections 5316 and 5317