

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-12-2003

# USA v. Thomas

Precedential or Non-Precedential: Precedential

Docket 02-2288

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Thomas" (2003). *2003 Decisions.* Paper 779.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/779

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed February 12, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2288

UNITED STATES OF AMERICA

v.

LUTHER THOMAS,

Appellant

ON APPEAL FROM THE DISTRICT COURT
OF THE VIRGIN ISLANDS

District Court Judge: Honorable Thomas K. Moore
(D.C. No. 00-cr-00272)

Argued: November 13, 2002

Before: SCIRICA, ALITO, and RENDELL, Circuit  Judges

(Opinion Filed: February 12, 2003)

        DOUGLAS J. BEEVERS (Argued)
        Assistant Federal Public Defender
        PO Box 1327
        St. Thomas, USVI 00804-1327
        Counsel for Appellant

        JOYCELYN HEWLETT (Argued)
        Assistant U.S. Attorney
        5500 Veterans Drive, Suite 260
        Federal Building & US Courthouse
        St. Thomas, USVI 00802-6424
        Counsel for Appellee

OPINION OF THE COURT

ALITO, Circuit Judge:

Appellant Luther Thomas contests the administrative
forfeiture of $1,049 in cash. After unsuccessfully moving for
a return of property pursuant to Federal Rule of Criminal
Procedure 41(e), Thomas argued that the government's
failure initially to assert jurisdiction over the res rendered
the forfeiture invalid. The District Court found no
jurisdictional deficiencies, and we affirm.

I.

On May 25, 2000, the Drug Enforcement Administration

obtained from the District Court a warrant to search Thomas's home. Officers seized $1,049 in cash pursuant to that warrant and arrested Thomas for possessing a small amount of cocaine base (crack) with intent to distribute. On June 1, a DEA task-force agent and Virgin Islands police officer converted the currency into a cashier's check and delivered the instrument to the United States Marshals' office. The DEA initiated administrative forfeiture proceedings on the money while Thomas awaited trial on the drug charges.

The DEA mailed a notice of seizure to Thomas at three different addresses and published notice in the Virgin Islands Daily News and the Wall Street Journal. Two of the mailed notices were returned to sender, and the DEA delivered another notice to Thomas granting him an additional 20 days to contest the forfeiture judicially by filing a claim and posting bond, as required by 19 U.S.C. S 1609(a). Thomas neglected to do so but moved the District Court for the property's return pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure. The Magistrate Judge denied that motion, and the DEA declared the money forfeited on December 7, 2000.

Thomas then attempted to seek the return of the money administratively by petitioning the DEA for remission of forfeiture. See 28 C.F.R. S 9.5 et seq. In his petition,

2

Thomas alleged that the $1,049 represented legitimate income from the sale of assorted knickknacks. While the petition was pending, the jury found Thomas not guilty of all of the criminal charges against him. On June 4, 2001, an attorney from the DEA's asset-forfeiture division informed Thomas that he had "failed to provide sufficient documentation showing a legitimate origin for the forfeited currency." The DEA's letter stated that a claimant alleging forfeited money to be legitimate business proceeds must provide "credible, verifiable documentation evidencing the transaction, such as bills of sale."

Thomas moved for reconsideration of his motions in both the administrative and judicial fora. Before the District Court, Thomas emphasized a different basis for his claim, arguing that the DEA never properly asserted in rem jurisdiction over the seized property, thereby undermining the forfeiture. For this argument, Thomas relied principally on Scarabin v. DEA, 966 F.2d 989 (5th Cir. 1992). The District Court ruled, citing United States v. McGlory, 202 F.3d 664, 670 (3d Cir. 2000), that it had no jurisdiction to adjudicate a Rule 41(e) motion for the return of property "once the government has initiated administrative forfeiture proceedings and the property is no longer the subject of an ongoing criminal proceeding." However, acknowledging McGlory's limited exception for a situation in which a Rule 41(e) movant alleges that the forfeiture proceedings failed to satisfy statutory and due-process requirements, see id., the District Court reached Thomas's Scarabin argument. It

concluded that because the $1,049 "was at all times in the
hands of the federal government," Scarabin  was inapposite,
and it therefore denied Thomas's motion. This appeal
followed.

II.

In Scarabin, the Fifth Circuit considered a challenge to
the administrative forfeiture of $12,360 in cash. Scarabin
operated a fuel dock and marine supply business at a
marina in Plaquemines Parish, Louisiana. See Scarabin v.
DEA, 919 F.2d 337, 338 (5th Cir. 1990) (hereinafter
Scarabin I).1 Acting pursuant to a warrant issued by a

_____

1. For clarity's sake we refer to the final Scarabin decision at 966 F.2d
989 (5th Cir. 1992), on which Thomas relies in this case, simply as
Scarabin.

Louisiana state court, personnel of the Plaquemines
Sheriff 's Department and the Drug Enforcement
Administration (DEA) raided the marina and found two
marijuana cigarette butts on the premises but not in the
vicinity of Scarabin. Id. In addition, the Sheriff seized
$12,360 from Scarabin. Id. Scarabin was originally charged
with criminal offenses, but these charges were dismissed.
Id. The seized funds, however, were forfeited in a DEA
administrative proceeding. Id. Scarabin pursued remission
of forfeiture via administrative channels but was rebuffed
due to a technicality. Id. In an opinion issued in 1990, the
Fifth Circuit acknowledged that it lacked jurisdiction to
review the denial of remission but remanded the case to the
DEA with the following suggestion: "[This] is the perfect
case for big government to be big hearted and big enough
to return ill-gotten gains to the rightful owner rather than
unjustly enrich itself on the basis of a technical'gotcha.' "
Scarabin I, 919 F.2d at 339.

By the time the case returned to the Fifth Circuit in
1992, additional facts had emerged concerning the
treatment of the seized cash. Unbeknownst to the Court
during consideration of Scarabin I:

> [A] mere three days after [its] search of the Parish
> marina and seizure of Scarabin's funds, the Sheriff 's
> Office bought a cashier's check using Scarabin's
> $12,360. [It] did so without the knowledge, much less
> the authority, of the state court. The cashier's check
> was then handed over to the DEA for civil forfeiture
> under federal law. . . . [T]he DEA proceeded to forfeit
> administratively the $12,360 from the cashier's check
> received from the Sheriff 's Office, purporting to forfeit
> the funds actually seized from Scarabin. . . . [T]he DEA
> gave the Sheriff 's Office $11,124 (or 90% of $12,360)
> under a federal statute that allows the DEA to return
> forfeited property to state or local law enforcement
> agencies that have participated directly in the seizure

or forfeiture of that property.

Scarabin, 966 F.2d at 991.

The Fifth Circuit concluded that "[t]he administrative forfeiture of which the DEA informed Scarabin [was] a non-

4

entity." Id. at 995. The Fifth Circuit stated that it was "astonished by the DEA's belated revelation that it never possessed or controlled Scarabin's $12,360 in cash, the res at issue in this case," and the Fifth Circuit noted that a federal agency undertaking an administrative forfeiture "must have physical control over the property to be forfeit." Id. at 993. The panel then reasoned that "[a]s the DEA by its own admission never had control over Scarabin's $12,360, it could not lawfully have found the property forfeit under the rules of in rem forfeiture." Id. Moreover, the panel held that, even if the DEA had possessed the actual res, the DEA would still have lacked in rem jurisdiction because "Scarabin's $12,360 was never out of the legal control of the state court and thus was never in the possession of the federal government." Id . at 995. In reaching this conclusion, the Fifth Circuit relied on a Louisiana statute that provided as follows:

> When property is seized pursuant to a search warrant, it shall be retained under the direction of the judge. If seized property is not to be used as evidence or is no longer needed as evidence, it shall be disposed of according to law, under the direction of the judge.

LA. C. CR. P. art. 167. The Court reasoned that, under this statute, "the state court's control terminates when, but only when, the seized property is disposed of according to law." Scarabin, 966 F.2d at 993. It held, accordingly, that "[a] federal agency cannot obtain jurisdiction over the res -- and thus cannot find the res administratively forfeit -- when a state court obtains jurisdiction first and never relinquishes that jurisdiction." Id. (citing, e.g., Penn Gen'l Casualty Co. v. Pennsylvania, 294 U.S. 189 (1935)).

III.

The Fifth Circuit's opinion in Scarabin may be read as holding that the DEA lacked in rem jurisdiction over the seized cash for two separate reasons: first, because the state court retained jurisdiction under state law and, second, because the DEA never actually possessed the cash but instead merely obtained a cashier's check from the local sheriff. Thomas appears to rely on both propositions.

5

He argues, first, that the District Court, not the DEA, had possession of the seized cash in this case, since the cash was seized pursuant to a warrant issued by the District

Court and, second, that possession of the res was lost when it was converted into a cashier's check. We address each argument in turn.

A.

Although Thomas contends that the District Court, not the DEA, possessed the res at issue here, he cites no legal authority that supports this conclusion. In Scarabin, as noted, the warrant was issued by a Louisiana state court, and a Louisiana statute provided that the seized property was to remain under the direction of the state court that issued the warrant. We disagree with Thomas's argument that Federal Rule of Criminal Procedure 41 operates analogously. The Rule gives a claimant some rights but does not provide that the warrant-issuing court, as opposed to the executive branch agency making the seizure, retains the res. Compare FED. R. CRIM. P. 41(d), (e) with LA. C. CR. P. art. 167. In the absence of a statutory provision like the one invoked in Scarabin, we decline to hold that, for purposes of in rem jurisdiction, property seized under a federal warrant rests within the exclusive possession of the warrant-issuing court rather than the executive-branch agency that executes the warrant and actually seizes the property. See United States v. Certain Real Property, 986 F.2d 990, 994-95 (6th Cir. 1993); United States v. $12,390, 956 F.2d 801, 805-06 (8th Cir. 1992); United States v. One 1986 Chevrolet Van, 927 F.2d 39, 44-45 (1st Cir. 1991).

Scarabin is also distinguishable from the present case on the ground that it involved a seizure by a state officer under a state warrant. The District Court considered this distinction dispositive when it ruled that because a federal search warrant authorized the seizure of Thomas's $1,049, the DEA, as another arm of the federal government, could properly assert jurisdiction over the res. Although we do not rely exclusively on this ground, we agree with the District Court that Scarabin should not be extended to cases where property seized by a federal officer under a

6

federal warrant is forfeited in a federal administrative proceeding.

B.

We also reject Thomas's argument that the DEA relinquished possession of the res when it converted the cash to a cashier's check. In making this argument, Thomas relies on the rule stated in The Brig Ann , 13 U.S. (9 Cranch.) 289, 290 (1815), and reaffirmed in Republic Nat'l Bank of Miami v. United States, 506 U.S. 80 (1992), that judicial cognizance of a forfeiture in rem is defeated "[i]f a seizure be completely and explicitly abandoned" before forfeiture proceedings are instituted. Id . at 86-87 (quoting The Brig Ann, 13 U.S. at 290). Under this rule, asserting jurisdiction over a res requires actual physical control over the res, and an abandonment of physical

control undermines in rem jurisdiction. "The Brig Ann stands for nothing more than this." Id. at 87. In order for this rule to apply to the present case, the act of converting cash to a check must constitute a "complete[ ] and explicit[ ] abandonment" of the res. The Brig Ann, 13 U.S. at 290. To the extent that Scarabin supports that result, however, it is in tension with approaches to the forfeiture of cash endorsed by other Circuits.

It behooves authorities to preserve seized money in the form in which they seized it when they intend to use it as physical evidence in a trial. Typical situations are when cash traded for drugs contains trace residue of the narcotics involved or when the serial numbers on the bills implicate the accused. However, when no legal significance attaches to the bills themselves, some courts favor a departure from literal application of in rem jurisdiction. In Madewell v. Downs, 68 F.3d 1030, 1042 n.14 (8th Cir. 1995), the Eighth Circuit refused to follow Scarabin, holding that "[c]urrency, cashier's checks, and bank deposits are simply surrogates for each other, and in modern society are certainly regarded as 'fungible,' when the question is ownership of the funds each represents." Similarly, the Ninth Circuit rejected the argument that when "currency was exchanged for a cashier's check, the currency, which is the res, 'disappeared into the banking

system and is no longer identifiable.' " United States v. $46,588 in U.S. Currency and $20.00 in Canadian Currency, 103 F.3d 902, 905 (9th Cir. 1996). Citing Madewell, it held that "the cashier's check was an appropriate, fungible surrogate for the seized currency." Id.

This approach accords comfortably with the jurisprudence of civil forfeiture. Historically, forfeiture proceeded from the legal fiction that property used in the commission of a crime itself offends the law. See, e.g., The Palmyra, 25 U.S. (12 Wheat.) 1, 14 (1827). The forfeited res, as a legal entity, is identical with the physical article when the property is, for example, a sea vessel, an automobile, or a firearm. Currency, however, differs substantially from such objects. Paper currency, in the form of the Federal Reserve Note, is defined as an "obligation[ ] of the United States" that may be "redeemed in lawful money on demand." 12 U.S.C. S 411 (2002). These bills are not "money" per se but promissory notes supported by the monetary reserves of the United States. When an individual engages in a criminal transaction with paper currency, although the individual certainly uses the notes to accomplish the criminal end, the currency's monetary value funds the transaction and is also an appropriate target of forfeiture. This result also follows from the fact that an individual who uses legal documents representing ownership of land to raise funds for a criminal purpose renders the land itself subject to forfeiture. See United States v. Rd 1, Box 1, Thompsontown, 952 F.2d 53 (3d Cir. 1991). It would be absurd, in that case, to suppose that

forfeiture could attach only to the document and not to the legal interests represented by that document. We therefore hold that the DEA did not abandon the res when it converted the currency to a cashier's check.

IV.

In sum, we hold that the DEA properly exercised in rem jurisdiction over the $1,049 seized from Thomas. As the District Court correctly recognized in citing McGlory, no other issue that would normally go to the merits of a Rule

8

41(e) motion may be considered or adjudicated at this time. We therefore affirm the judgment of the District Court.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

9